[Civ. No. 25313. First Dist., Div. Four. Apr. 2, 1969.]

WILLIAM A. BURKETT, Plaintiff and Appellant, v. CONTINENTAL CASUALTY COMPANY, Defendant and Appellant.

Weingarten & McGinty and Saul M. Weingarten for Plaintiff and Appellant.

Carroll, Davis, Burdick & McDonough and J. D. Burdick for Defendant and Appellant.

DEVINE, P. J.—William A. Burkett, plaintiff, brought an action against defendant, Continental Casualty Company, to recover on a disability insurance policy. He was awarded judgment for the maximum benefits in the amount of $1,000 per month from February 12, 1966, to the date of judgment, October 19, 1967, but subject to deduction for amounts representing workmen's compensation benefits "paid or payable." Plaintiff appeals on the ground that no workmen's compensation benefits actually were paid to him and that none were "payable," wherefore the deduction should not have been allowed.

Continental Casualty Company cross-appeals, asserting that the policy provides benefits for a disability *commencing* while the policy is in force, even though such disability is the result of an illness or sickness which pre-existed the issuance of the policy, and that plaintiff's disability did not *commence* during the life of the policy but commenced earlier.

## Plaintiff's Appeal

The contract of insurance, which is a group policy, provides that the benefit payable shall be "LESS ANY AMOUNT PAID OR PAYABLE UNDER ANY WORKMEN'S COMPENSATION, OCCUPATIONAL DISEASE ACT OR LAW."

The insurance company presented as a witness Mr. John O'Connell, a lawyer who had been a member of the Workmen's Compensation Appeals Board and its predecessor, Industrial Accident Commission, from July 1963, to February 1967. (Trial was in August 1967.) He testified that if Mr. Burkett had applied for workmen's compensation, which he

did not do, he would have been eligible for the amounts which were later deducted from the amount awarded, as described above. He conceded that he could not testify that Mr. Burkett actually would have been paid these amounts, saying, "I don't think anybody can say that."

There is a good deal of discussion in the briefs about the admissibility of testimony of an expert as to what result there might have been had application been made for workmen's compensation; and also about Mr. O'Connell's testimony in particular, especially because he conceded that he was not qualified to answer whether the Zollinger-Ellison Syndrome (which a physician testified at the trial was the plaintiff's ailment) was a natural or reasonably probable result of the employment. Mr. O'Connell had tried to place himself in the position of a referee and had concluded that the opinion of the testifying physician would show that the disability was either caused or aggravated by Mr. Burkett's activities as an employee of the bank.

We think it is unnecessary for us to go into the subject of the general competency of an expert to testify as to the likely results of a proceeding which was never commenced, or into the matter of appellant's assertions of deficiencies of Mr. O'Connell's testimony. The policy does not contain any statement of an obligation on the part of the insured to apply for workmen's compensation. The word "payable" does not necessarily mean that which might (or might not) have been obtained by the commencement of proceedings under the Workmen's Compensation Act. It is subject to the meaning that what has been awarded by the Workmen's Compensation Appeals Board but has not yet been collected is "payable."

The terms of an insurance policy are to be construed strictly against the insurer. (*Southwestern Funding Corp.* v. *Motors Ins. Corp.*, 59 Cal.2d 91, 94 [28 Cal.Rptr. 161, 378 P.2d 361]; *Continental Cas. Co.* v. *Zurich Ins. Co.*, 57 Cal.2d 27, 32 [17 Cal.Rptr. 12, 366 P.2d 455].) We find nothing which would require the insured to take upon himself the burden of proving his case before the Workmen's Compensation Appeals Board and its referees. Especially do we find no reason for requiring such action when there is no evidence that the company made demand either by general announcement to the employees covered by the policy or by particular demand upon plaintiff.

The argument of the insurance company does not take into consideration the determined resistance which might have

been made by a workmen's compensation carrier against any claim made by Mr. Burkett. Moreover, it overlooks the fact that the very condition which caused his disability was one which, by defendant's own arguments, was caused by over exertion in his business activities and which might have been aggravated by a contest to obtain workmen's compensation. It is true that this difficulty must be faced by many applicants for workmen's compensation who must rely on that form of relief. But one who purchases a disability insurance policy need not take proceedings to relieve his insurer by seeking other remedies, unless the policy clearly obliges him to do so.

If a duty to prosecute a workmen's compensation claim were held to arise by implication from the words of the policy, stated above, a number of questions would be presented: what examination and inquiry about his own illness must be made by the insured? may he settle the workmen's compensation claim and, if so, may he take into consideration his personal desires and convenience, or must he strive to get the maximum in order to minimize his claim on the disability insurance policy? if the workmen's compensation decision by a referee is that he take nothing or is for an amount less than that which should have been expected, must he seek reconsideration by the Workmen's Compensation Appeals Board? must he bear the cost of counsel fees in the workmen's compensation proceeding? Probably other problems would arise, the solution to which would have to be sought by a "trial within a trial," that is, a judicial evaluation on suit against the insurance company of the true worth of the insured's possible claim against another carrier. If these burdens are to be placed on the insured, the policy should say so.

Respondent insurance company cites Black's Law Dictionary, which defines the term "payable" as follows: "PAYABLE. Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. *In re Advisory Opinion to the Governor*, 74 Fla. 250 [77 So. 102, 103]." Even under the terms of this definition, the situation may be one not only "admitting" but *"demanding* payment" or *"justly due"* (italics supplied).

Besides, we do not think that this whole definition, taken from an advisory opinion to the Governor of Florida, would be necessarily binding on an insured person in Monterey, California.

## *Defendant's Appeal*

█ The insurance company admits in its brief that the coverage in its policy is extremely broad, but contends that it is clear that the company did not intend to issue a policy extending benefits for events which had already occurred and which were therefore not contingent.

The trial judge, in a memorandum opinion, summarizes the evidence as follows:

"Admittedly plaintiff had been suffering from gastritis as far back as 1955 and it had become sufficiently acute that he endured a resection of his stomach September 7, 1963 and on doctor's orders took a trip to Europe in the fall of 1964. In December 1964 and again January 1965 he went to the Palo Alto-Stanford Hospital Center. Just before the policy was taken out on February 18, 1965 plaintiff made plans for another stomach operation which in fact was performed March 8, 1965.

". . . Now the evidence heavily preponderates in favor of the plaintiff that he suffered gastritis which reached a point by November 14, 1965 that he was 'unable to perform each and all the material duties pertaining to his occupation' and from that time to the present that he has been continuously unable to engage in each and every act of employment for wage or profit for which he is reasonably qualified, and that he has not so engaged. This resulted from gastritis causing loss while the policy was in force. Unquestionably he was ill before February 18, 1965, but he was not rendered totally disabled until November 14, 1965.

"Allowing ninety days elimination period compensable disability commenced February 12, 1966."

A finding in accord with the memorandum was made.

The conclusion of the trial judge is amply supported by the evidence. Even following the surgery of March 8, 1965, Mr. Burkett made heroic, if perhaps ill-advised, efforts to continue in his position as president of a bank. It may be that he would have continued even beyond the date of his retirement on November 14, 1965, thereby abstaining from recovery under the disability policy, had it not been for the fact that his physician, having come to the conclusion in November 1965 that Mr. Burkett's condition was then substantially worse than it had been in February 1965 (when the insurance was taken out), advised him to retire. Thus, it surely cannot be said as a matter of law, if it can be said at all, that plaintiff's disability commenced before the policy became effective.

The judgment is modified by striking therefrom the deduction for possible workmen's compensation benefits and, as so modified, it is affirmed. Plaintiff-appellant will recover his costs on appeal.

Rattigan, J., and Christian, J., concurred.