287 So.2d 837

**Albert L. ANTRAM, etc.**

**v.**

**STUYVESANT LIFE INSURANCE COMPANY, a corp.**

**SC 276.**

Supreme Court of Alabama.

Dec. 6, 1973.

Rehearing Denied Jan. 24, 1974.

McDermott & Slepian, Mobile, for appellee.

Vickers, Riis, Murray & Curran, Mobile, for appellant.

**718**

JONES, Justice.

This is an action by Albert L. Antram, appellant, seeking declaratory judgment to determine his rights under a salary continuation provision in a sickness and accident policy issued by appellee, Stuyvesant Life Insurance Company, to Antram's employer, Beloit Corporation, for the benefit of Beloit's employees. Antram was covered under said policy.

On January 4, 1968, Antram was riding in an automobile in Beaumont, Texas, and, while acting within the line and scope of his employment, an automobile driven by Margaret R. Cooley collided with Antram's automobile. As a direct result of said collision, Antram was totally and permanently disabled.

The benefits payable under the policy are:

"Fifty (50%) percent of regular earnings . . . subject to a maximum monthly indemnity of $1,000.00, *less any amount of disability income benefits paid or payable* under primary Social Security, Workmen's Compensation, Unemployment Compensation or disability benefits law . . . ." (Emphasis ours.)

Antram's benefits were computed as follows:

| | | |
|---|---:|---:|
| 50% of $900 Per Month Base Salary | | $450.00 |
| Less Monthly Social Security Benefits | 155.85 | |
| Less Monthly Workmen's Comp. Payments | 190.67 | 346.52 |
| Net Monthly Salary Continuation Payment | | $103.48 |

On November 6, 1968, Antram filed suit in the U. S. District Court for the Eastern District of Texas, Beaumont Division, against Ms. Cooley. On July 16, 1969, the Probate Court of Mobile County, Alabama, declared Antram to be a person of unsound mind, and Letters of Guardianship were issued to his wife, Dorothy Louise Antram.

On August 27, 1969, the Probate Court of Mobile authorized Mrs. Antram, as Antram's guardian, to settle the Texas suit with Ms. Cooley for $100,000.

Prior to and until said settlement, Antram was paid $190.67 per month by Beloit's workmen's compensation carrier who would otherwise have been obligated to continue said payments until they reached a total of $17,600. The total amount of workmen's compensation payments received prior to the settlement was $2,682.68.

Pursuant to Title 26, § 312, Code of Alabama 1940 (Recomp.1958), the workmen's compensation payments were discontinued on September 4, 1969, and Antram was required to refund the $2,682.68 received from the carrier prior to the settlement.

After settlement, the discontinuance of the workmen's compensation to Antram, and the reimbursement of the $2,682.68 to the carrier, appellee continued to deduct the $190.67 per month from the salary continuation payments although Antram demanded that the appellee cease making such deductions.

However, on January 1, 1970, when social security benefits were increased by 15%, the appellee reduced the monthly payments to the appellant to $80.08. On January 1, 1971, social security benefits were increased by 10% and the appellee reduced the salary continuation payment to $62.08. The Social Security Act was amended again in September of 1972, increasing the benefits by 20%, and the appellee accordingly reduced its payments to the appellant to $22.70.

Appellant requested the court to declare that the appellee was not entitled to deduct $190.67 per month from his salary continuation payment and to direct the appellee to reimburse to Antram the sums representing said workmen's compensation bene-

fits previously deducted from the salary continuation payments.

■ The appellant contends that no workmen's compensation benefits were or are *paid* or *payable* to him as the result of the third-party recovery which excused the carrier from liability.

The appellee contends that Antram's accident was incurred in the line and scope of his employment and that workmen's compensation benefits were and are *paid* and *payable* to Antram within the meaning of those terms as they were used in the policy.

The court entered a decree on August 17, 1972, holding that the exclusionary clause contained in the disability policy was applicable to Antram and therefore Antram was not entitled to the relief prayed for. Hence the appeal.

The issue is whether the words "or payable" should be interpreted as authorizing the insurer to deduct the workmen's compensation benefits from the salary continuation payment where the insured did not receive such benefits due to a settlement with the third-party tort feasor. Otherwise stated, when the insured does not receive any workmen's compensation benefits due to a settlement with a third-party tort feasor, should the insurer be allowed to reduce the payments it is obligated to make to the insured under a salary continuation insurance policy by the amount the insured would have received under the Workmen's Compensation Act if there had been no third-party recovery merely because the insured's injury fortuitously occurred while the insured was acting in the line and scope of his employment? We answer in the negative and hold that the trial court erred in allowing the offset of $190.67 per month (the amount of workmen's compensation benefits which would have been payable except for the third-party recovery)

against the salary continuation provision of the policy.

The appellant contends that the policy is ambiguous and that interpreting "or payable" to authorize the insurer to deduct payments that he, the appellant, was never entitled to receive, due to a third-party settlement, is unreasonable, illogical, and has the effect of allowing the insurer to participate in the third-party settlement. The appellant relies heavily on Baggett v. Webb, 46 Ala.App. 666, 248 So.2d 275 (1971), Cert. den. 287 Ala. 725, 248 So.2d 248 (1971), although he acknowledged that this case is not directly in point. The only case cited by appellant which bears directly on the issue before us is Burkett v. Continental Casualty Company, 271 Cal.App.2d 360, 76 Cal.Rptr. 476 (1969).[1]

The appellee argues that the workmen's compensation benefits are still payable subject to a credit resulting from the third-party recovery. Appellee contends that Land v. Continental Casualty Company, 284 Minn. 453, 170 N.W.2d 568 (1969) is directly in point and requests that this Court adopt the reasoning of *Land*. The appellee also cites Wise v. American Casualty Company, 117 Ga.App. 575, 161 S.E. 2d 393 (1968) in support of its arguments. The only Alabama case relied on is Phillips v. The Prudential Insurance Company of America, 285 Ala. 472, 233 So.2d 480 (1970), which held that the exclusionary clause in a family hospital policy stating that the policy did not provide benefits for an injury covered by any Workmen's Compensation Act, related to the type of injury placing the claimant under the workmen's compensation law, rather than to the benefits flowing from such law. The appellee also argues that the Court should not remake its contract with Beloit.

The Alabama cases cited are neither by direct application nor by analogy disposi-

---

1. For additional cases relating to the general issue of offset of workmen's compensation payments, although not here factually analogous, see King Sturgill, Jr. v. Life Insurance Co. of Georgia, 465 S.W.2d 742 (Tenn.App. 1970); and Songe v. Tennessee Life Insurance Company, 260 So.2d 149 (La.App., 1972).

tive of this precise issue now before us. The California *Burkett* case stands foursquare for the position of the appellant (injured employee) as does the Minnesota *Land* case for the appellee (insurer). Faced with a first impression case in Alabama—and with split authority from other jurisdictions—we must return to our basic rules of interpretation and construction of insurance contracts to resolve this issue. As summarized by the Alabama Court of Appeals in the 1961 case of Mercantile Life Insurance Company v. Johnson, 41 Ala.App. 307, 132 So.2d 248,

> "It is a well settled rule that the terms of an insurance policy will be construed most strongly against the insurer and where the words of a policy are ambiguous, or where they are capable of two reasonable interpretations, that favorable to the insured will be adopted."

Likewise the expansion of this rule was stated by the same court during the same term in Globe Life Insurance Company of Alabama v. Howard, 41 Ala.App. 621, 147 So.2d 853, thusly:

> "Also, it is said that the terms of a policy are construed in their plain, ordinary and popular usage . . . and are to be given a rational and pratical construc-struction."

We believe the "plain and ordinary" portion of the above rule is here applicable. Within the context which we are asked to construe this contract, we see nothing ambiguous about the word "payable". The mere fact that adverse parties contend for different constructions does not of itself force the conclusion that the disputed language is ambiguous. Under the stipulated facts of this case, workmen's compensation benefits are payable or they are not payable. Title 26, § 312, Code of Alabama 1940 (Recomp.1958), as amended, provides the irrefutable answer. Where the injured employee received a third-party recovery in excess of workmen's compensation benefits, there is no liability on the part of the employer, or its compensation carrier, to pay workmen's compensation benefits. Indeed, except for its share of the employee's attorneys fees, as provided in the last sentence of § 312, the third-party recovery in such cases operates as a complete bar to any remedy for workmen's compensation payments.[2]

The contention that the injured employee could have elected to forego the third-party recovery and thereby entitled himself to workmen's compensation benefits—and, therefore, such benefits are "payable"—is untenable. The inquiry is not what he could have done—hence producing a hypothetical situation—but rather the inquiry is what in reality did he do? In this case he pursued and made recovery, as he had a right to do, in his third-party action. Once his third-party recovery was effected, workmen's compensation benefits were not payable.

An examination of the insurer's treatment of social security benefits reveals an interpretation by the insurer of the word "payable" totally consistent with our holding. The insurer did not fix the status of such benefits as of the time of the original computation of benefits under the policy, but rather it continued to credit the social security increases as they accrued. With this we agree. This is clearly the field of operation intended by the word "payable". The only consistency perceivable by an adoption of the insurer's contention with respect to the workmen's compensation offset is found in a result most favorable to the insurer. When this interpretation is applied equally, credit for social security payments is due to the full extent that such payments are "payable" to the insured; and likewise no credit is due where workmen's compensation benefits are not "payable".

---

2. This is not to be construed as a bar to recovery of medical and hospital expenses. See Liberty Mutual Insurance Co. v. Manasco, 271 Ala. 124, 123 So.2d 527.

We now address ourselves to one remaining aspect of the case. On inquiry of counsel by the Court during oral argument, disclosure was made to the effect that plaintiff's counsel had availed himself of the "attorneys fees" provision in the last sentence of § 312. This he had every right, indeed duty, to do. This provision states:

"In any settlement made under this section with a negligent third-party by the employee, or in case of his death, by his dependents, the employer shall be liable for that part of the attorneys fees incurred in the settlement with the third-party, either with or without suit, in the same proportion that the amount of the reduction in the employers liability to pay compensation bears to the total recovery had from such third-party."

The "reduction in the employers liability to pay compensation" effected by the third-party recovery was $17,600. The insurance carrier was rightly charged with its proportionate share of the plaintiff's attorneys fees for effecting such recovery. To the extent the workmen's compensation insurance company paid such fees, the appellee (insurer) is entitled to a credit, this being workmen's compensation benefits "paid or payable". The fact that such payment is designated as attorneys fees is of no consequence since the end result inures to the direct benefit of this injured employee and third-party plaintiff. Baggett v. Webb, supra.

Therefore, a proper inquiry on remand of this case is the amount of any payment made by the workmen's compensation carrier to the employee or his attorney by way of attorneys fees in the third-party action. An allowable credit against benefits provided under the salary continuation policy here under consideration would then be appropriate.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, McCALL and FAULKNER, JJ., concur.

COLEMAN and MADDOX, JJ., dissent.

MADDOX, Justice (dissenting).

I must respectfully dissent. I do not think the words "payable under . . . Workmen's Compensation . . . or disability benefits law . . ." are ambiguous. I believe we should follow the reasoning of Land v. Continental Casualty Co., 284 Minn. 453, 170 N.W.2d 568 (1969), which the majority admits stands "foursquare" for the appellee (insurer).

In Brunson Milling Co. v. Grimes, 267 Ala. 395, 103 So.2d 315 (1958), this Court said:

"Our Workmen's Compensation Laws were adopted from the Minnesota Laws of Workmen's Compensation, M.S.A. § 176.01 et seq., and Minnesota construction of that law is of persuasive value to this court. Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288. . . . "

In Phillips v. Prudential Ins. Co. of America, 285 Ala. 472, 233 So.2d 480 (1970), this Court, in construing a clause in a policy which did not provide benefits with respect to "sickness or injury covered by any workmen's compensation act" stated that " . . . it is *the type of disease or injury* that calls into play the exclusion *rather than the amount of benefits* that may be received . . . " The injury to Antram was *covered* under Workmen's Compensation laws and benefits were paid because the injury arose out of Antram's employment. I believe this Court's case of Phillips v. Prudential Ins. Co. of America, supra, gives guidance in interpreting provisions of the insurance contract here. I also believe we should follow the *Land* case, since it is on all fours and construes a provision of Minnesota's Workmen's

Compensation Law which is similar to Section 312, Title 26. The Minnesota court held that benefits recovered from a third party tortfeasor by a covered employee were "payable" under a Workmen's Compensation Law.

Furthermore, I cannot agree that Burkett v. Continental Cas. Co., 271 Cal.App. 2d 360, 76 Cal.Rptr. 476 (1969), stands "foursquare" for the insured. There, Burkett did not make claim for Workmen's Compensation benefits. Burkett's insurer put on a witness who testified Burkett would have been entitled to such benefits had he applied for them. Here, the insured had been paid or had already established eligibility to Workmen's Compensation benefits. The California court said:

"The contract of insurance, which is a group policy, provides that the benefit payable shall be 'LESS ANY AMOUNT PAID OR PAYABLE UNDER ANY WORKMEN'S COMPENSATION, OCCUPATIONAL DISEASE ACT OR LAW.'

"The insurance company presented as a witness Mr. John O'Connell, a lawyer who had been a member of the Workmen's Compensation Appeals Board and its predecessor, Industrial Accident Commission, from July 1963 to February 1967. (Trial was in August 1967.) He testified that if Mr. Burkett had applied for workmen's compensation, which he did not do, he would have been eligible for the amounts which were later deducted from the amount awarded, as described above. He conceded that he could not testify that Mr. Burkett actually would have been paid these amounts, saying, 'I don't think anybody can say that.'

"There is a good deal of discussion in the briefs about the admissibility of testimony of an expert as to what result there might have been had application been made for workmen's compensation; and also about Mr. O'Connell's testimony in particular, especially because he conceded that he was not qualified to answer whether the Zollinger-Ellison Syndrome (which a physician testified at the trial was the plaintiff's ailment) was a natural or reasonably probable result of the employment. Mr. O'Connell had tried to place himself in the position of a referee and had concluded that the opinion of the testifying physician would show that the disability was either caused or aggravated by Mr. Burkett's activities as an employee of the bank.

"[1a] We think it is unnecessary for us to go into the subject of the general competency of an expert to testify as to the likely results of a proceeding which was never commenced, or into the matter of appellant's assertions of deficiencies of Mr. O'Connell's testimony. The policy does not contain any statement of an obligation on the part of the insured to apply for workmen's compensation. The word 'payable' does not necessarily mean that which might (or might not) have been obtained by the commencement of proceedings under the Workmen's Compensation Act. It is subject to the meaning that what has been awarded by the Workmen's Compensation Appeals Board but has not yet been collected is 'payable.' [2] The terms of an insurance policy are to be construed strictly against the insurer. (Southwestern Funding Corp. v. Motors Insurance Corp., 59 Cal.2d 91, 94, 28 Cal.Rptr. 161, 378 P.2d 361; Continental Casualty Co. v. Zurich Insurance Co., 57 Cal.2d 27, 32, 17 Cal. Rptr. 12, 366 P.2d 455.) [1b] We find nothing which would require the insured to take upon himself the burden of proving his case before the Workmen's Compensation Appeals Board and its referees. Especially do we find no reason for requiring such action when there is no evidence that the company made demand either by general announcement to the employees covered by the policy or by particular demand upon plaintiff.

"The argument of the insurance company does not take into consideration the determined resistance which might have been made by a workmen's compensation carrier against any claim made by Mr. Burkett.

---

Moreover, it overlooks the fact that the very condition which caused his disability was one which, by defendant's own arguments, was caused by over exertion in his business activities and which might have been aggravated by a contest to obtain workmen's compensation. It is true that this difficulty must be faced by many applicants for workmen's compensation who must rely on that form of relief. [3] But one who purchases a disability insurance policy need not take proceedings to relieve his insurer by seeking other remedies, unless the policy clearly obliges him to do so."

It seems to me that if the California Court had been faced with the facts of this case, it would have held as I suggest. Here, Antram had been awarded benefits. In the California case, the insured had not. There was nothing contingent or doubtful about Antram's award. In the California case, the insured had not even applied for benefits under Workmen's Compensation.

Based on what I have said, I would affirm the trial court. Consequently, I respectfully dissent.