Margaret Elaine BOYKIN, Appellant,

v.

XEROX CORPORATION, Appellee.

No. 2-81-034-CV.

Court of Appeals of Texas, Fort Worth.

June 17, 1982.

Rehearing Denied July 22, 1982.

Norman Darwin & Associates, and Norman Darwin, Fort Worth, for appellant.

Thomas L. Farris, Fort Worth, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

## OPINION

JORDAN, Justice.

This case involves the question of whether or not an employer, under a disability income plan for its employees, is entitled to deduct from total disability payments paid under such plan the amount of worker's compensation paid by the employers compensation carrier even though the carrier eventually recoups payment of its benefits to the employee.

Appellant, an employee of appellee Xerox Corporation, was seriously and permanently injured, while in the course and scope of her employment, in an automobile collision on June 18, 1976. Xerox had in effect at that time a disability income plan for its employees, with short term and long term provisions. Under this agreement with its employees the employee would receive 100% of his or her salary for the first five months if they were totally disabled from pursuing their employment with Xerox, and thereafter would receive 70% of his or her salary until age 65 or for so long as the disability continued. The disability plan also provided however, in paragraph IV B, that "Benefits will be reduced by any amounts paid or payable under any worker's compensation or occupational disease law ... (and other collateral sources of benefits)." (Emphasis ours.)

Xerox also had worker's compensation insurance under a policy issued by Employers Mutual Liability Insurance Company of Wisconsin. Appellant filed her claim for worker's compensation benefits, and after receiving weekly compensation benefits of $1680.00, settled her claim with the compensation carrier for a total of $13,680.00, including the $1680.00 weekly benefits, plus some medical payments.

Appellant thereafter filed suit against the driver of the automobile involved in the collision which resulted in her permanent disability, and settled that claim for an undisclosed amount, but apparently for considerably more than the amount she had received as compensation benefits. The compensation carrier, Employers Mutual Liability Insurance Company of Wisconsin, under its subrogation rights, recovered from that settlement with the third party the sum of $17,500.00, representing the $13,680.00 compensation benefits paid appellant plus some medical payments paid for her benefit.

Appellee deducted the total of $13,680.00 compensation benefits from the disability payments paid appellant under the company income disability plan. Disability income payments were made to appellant for the five month short term disability period, and under the long term disability period were made to the extent of 70% of her salary at the time of the accident, and apparently are still being made to her in that amount.

Appellant brings this suit to recover the $13,680.00 she claims was wrongfully deducted from her income disability payments from Xerox because, according to her theory, since she had to repay the compensation carrier for the compensation benefits, she actually received no net payment of compensation benefits. Therefore, she contends, she was due the full amount of disability income under the appellee's plan, without the deductions.

The cause was submitted to the trial court, sitting without a jury, on stipulated facts, and on August 19, 1981, the trial court rendered a take nothing judgment against appellant. Findings of Fact and Conclusions of Law were requested and filed by the court.

We affirm.

Appellant raises three points of error, all contending that since appellee's Workers' Compensation insurance carrier had recouped their $13,680.00 paid appellant in compensation benefits, that appellant had not in fact been paid any "net" benefits and that Xerox was therefore not entitled to deduct the compensation payments from payment of the disability income under the company's disability plan.

It is obvious from a reading of the "Benefit Payments" of appellee's disability income plan that the purpose of the plan is to provide some manner of disability income to workers who, because of injury or illness, are unable to perform their assigned tasks for Xerox over an extended period of time. The plan was not designed to provide excess, or double or triple amounts of disability income to the extent that an injured worker would be in a better position financially than if he or she had not been injured or stricken by disease or illness.

Section IV of the Plan is entitled "AMOUNT OF BENEFITS". Section IVA provides for payments of 100% of a person's salary for the Short Term period of up to five months, and 70% of his or her salary for the Long Term Disability Period to age 65 or until the employee is no longer disabled. Section IVB reads as follows:

> B. Coordination with Other Disability Benefits—Benefits will be reduced by any amounts paid or payable under any worker's compensation or occupational disease law, any state compulsory disability benefits law including mandatory no-fault insurance, any disability, retirement or other income benefits provided by the company, and any amounts paid or payable under the disability or retirement provisions of the Social Security Act or other federal disability programs.

A reading of this paragraph, we think, makes it clear and certain that the intent of Xerox was to assure their employees of some substantial income during periods of disability. It was not designed to add to other benefits the disabled worker might be entitled to, and thus it was provided that Xerox's disability payments would be reduced by payments from collateral sources, such as those mentioned in Paragraph IVB. The plan was not inaugurated to make it profitable for a person to become disabled, but to make certain, as this plan did, that a disabled worker would have good income, even if his disability existed until that worker reached 65 years of age.

If appellant is correct in her contention that her compensation benefits of $13,-680.00 should not have been deducted from Xerox's disability payments, she would receive a double recovery for her injury. She would receive 100% of her salary for five months, then 70% of that salary until she reached 65 or was no longer disabled, plus her compensation benefits. That is not what this disability payment program was intended to accomplish. The concept of a long term disability plan is such that the employee is to receive a fixed amount commensurate with his or her salary. It is not intended to be in addition to other benefits so that the disabled employee would receive more compensation for being disabled than he or she would have received if they had remained in good health and on the job. Appellee in this case had to date received all of the benefits to which she was entitled under the long term disability plan instituted by Xerox. Those benefits exceed greatly what she would have received under appellee's Workers' Compensation Policy.

Suppose, for a hypothetical instance, that appellant had not filed suit against her third party tort-feasor, but had simply col-

lected her workers' compensation benefits. Could it be argued then that appellee could not deduct from its disability payments the amount of workers' compensation benefits received by appellant? We think not.

Paragraph IVB of the Plan refers to "any amounts paid or payable under any worker's compensation or occupation disease law ..." That means if compensation benefits are either paid or are due, Xerox is entitled to deduct from its disability payments the amount of compensation benefits.

The trial court, in its Conclusions of Law held that "To allow an employee to collect income benefits under a voluntary plan, a worker's compensation plan, and a tort suit, would amount to a triple recovery for lost income as a result of disabling injuries." The court also held that "[t]he Xerox short term and long term disability plan does not violate public policy or any law by providing that income payments received by the employee pursuant to such plan will be reduced by the amount of income replacement payments paid from any other source, including worker's compensation and social security." We concur in both of those holdings.

The question in this case seems to be one of first impression. The parties have cited no Texas case exactly in point, nor have we been able to find one.

There are three cases in other jurisdictions involving this general question and which reach different results. The case of *Antram v. Stuyvesant Life Insurance Company*, 291 Ala. 716, 287 So.2d 837 (1974) supports, to some extent, appellant's argument. In that case, the appellant's employer had a disability income payment plan with appellee insurance company with provisions therein similar to those involved in this case which permitted the insurer to deduct from their disability payments any amounts paid for worker's compensation, Social Security, or other benefits.

Antram was injured in an automobile collision while in the course and scope of his employment and the disability income insurer paid his benefits, less his monthly worker's compensation benefits. Antram settled with the third party tort-feasor for $100,000.00, and the compensation carrier was repaid, under its subrogation rights, the sum of $2,682.68 for compensation benefits paid to that date. Appellee, the disability insurer, had been deducting $190.67 per month from its payments because that was the monthly amount paid by the compensation carrier. Appellee contended they were entitled to continue to deduct from their payments the amount of $190.67 per month until the total amount of $17,600.00, the maximum amount of compensation Antram could recover, was paid back to appellee. After the settlement with the third party, the compensation carrier discontinued its monthly compensation payments, as it was entitled to do.

The court in *Antram* held that the disability insurer for Antram's employer was not entitled to deduct the worker's compensation benefits from the salary continuation payment where the insured did not receive such benefits due to a settlement with the third party tort-feasor.

We think there is a distinction between the instant case and Antram. So far as we can tell from the opinion, the amount of compensation actually paid Antram by the compensation carrier, $2,682.68, which was repaid the compensation carrier after the settlement with the third party tort-feasor, was not in issue. There was no dispute over its deduction by appellee from its disability payments to Antram. The dispute was over the deduction of the $190.67 per month for compensation benefits after the settlement with the third party, when compensation benefits were no longer due Antram. We think the recovery by the disability carrier in Antram of the $2,682.68 already paid in compensation, is the same as the $13,680.00 compensation paid in this case which was repaid to the compensation carrier after Margaret Boykin's settlement with the third party tort-feasor.

One other case, *Burkett v. Continental Casualty Company*, 271 Cal.App.2d 360, 76 Cal.Rptr. 476 (1969) also generally supports appellant's contentions in this case.

On the other hand, in *Land v. Continental Casualty Company*, 284 Minn. 453, 170 N.W.2d 568 (1969), in a case very similar to the one now before us, the Minnesota Supreme Court held that benefits recovered from a third party tort-feasor by a covered employee were "payable" under a Workers' Compensation Law and were thus deductible from payments under a disability policy which deducts from its benefits "any amount paid or payable under Workmen's Compensation." This provision in the disability policy, it is noted, is identical to the provisions in Xerox's Paragraph IVB of its income disability plan.

We think the *Land* case contains the better reasoning and we therefore follow its holding.

The case of *Williams v. Employers Mutual Casualty Company*, 368 S.W.2d 122 (Tex. Civ.App.—San Antonio, 1963) is also helpful. There, in an opinion by Justice Barrow, it was held that a provision of an automobile liability policy excluding coverage as to medical payment benefits which are, in whole or in part, either payable or required to be provided under any workmen's compensation law, would preclude payment of benefits where such benefits, payable and required to be provided under workmen's compensation law, were not paid claimant simply because he elected to recover from a third party.

Appellant's points of error are overruled and the judgment is affirmed.