WATSON, Justice.
The issue is whether the disability insurer of an employee can claim credit against its policy for compensation benefits paid to the employee which are later refunded to the compensation carrier from a tort settlement.
Defendant, Pan American Life Insurance Company (PALIC), issued a group accident and sickness policy to Patterson Services, Inc.,[1] plaintiff Erroll Pinell’s employer. The PALIC policy is contributory, paid jointly, half and half, by the employer and the employee. It is designed to pay disability benefits unless a workers’ compensation law imposes those costs on the employer or his compensation insurance carrier. A general limitation clause excludes benefits where the claimant “has or had a right to compensation”,[2] while a specific clause in the insurance schedule integrates benefits for occupational accidents with workers’ compensation.[3] The policy provides benefits for fifty-two weeks at sixty percent of the employee’s income, up to a maximum of $200 per week. If workers’ compensation benefits exceed $200 per week, nothing is due under the policy; if compensation benefits are less than $200 per week, the PALIC policy makes up the difference.
Plaintiff was injured on June 4, 1977, in the course and scope of his employment on a Mallard Drilling Company rig located in navigable waters. He timely filed for ben *596 efits in June, 1977, under both the PALIC policy and the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA).[4] PALIC declined to pay any benefits because Pinell was receiving LHWCA benefits from Patterson’s compensation carrier of $282.29 per week (exceeding PALIC’s $200 per week limit). Pinell received those benefits from June 4, 1977, until October 1, 1978,[5] and again from June 1, 1979, until March 1, 1981, when he settled a tort suit against the owner of the rig and other alleged tort-feasors for $210,000.
Patterson’s compensation carrier was reimbursed from the settlement $39,500 that it had paid to plaintiff and given a credit against any future LHWCA benefits for which it might be liable, up to the entire amount of the settlement.
Pinell filed suit against Patterson and PALIC on February 9, 1983, alleging that he was entitled to recover benefits under the PALIC policy because, after the reimbursement, he had not received workers’ compensation benefits.
The trial court awarded Pinell $7,800, the policy maximum. The Court of Appeal reversed, relying on Walker v. Louisiana Hospital Service, Inc., 224 So.2d 494, 495 (La.App. 1st Cir., 1969).[6] A writ was granted to review the judgment.[7]
While defendant argues that the General Limitations Clause[8] of the PALIC policy bars plaintiff’s claim, plaintiff contends that coverage is “otherwise specified in the policy”[9] in the benefits schedule covering occupational accidents which integrates benefits with workers’ compensation.[10]
The terms of a policy must be construed together to ascertain the intention of the parties. Benton Casing Service, Inc. v. Avemco Ins. Co., 379 So.2d 225 (La.,1979). Any ambiguity in a policy provision must be construed liberally in favor of the insured and against the insurer which drafted and issued the policy. Rodriguez v. Northwestern Nat. Ins. Co., 358 So.2d 1237 (La.,1978). Thus, policy language extending coverage is broadly interpreted, while policy language excluding coverage is restrictively interpreted. Branam v. Traders and General Ins. Co., 344 So.2d 1073 (La.App. 3 Cir.1977). Exclusionary provisions must be read within the context of the entire policy. West v. City of Ville Platte, 237 So.2d 730 (La.App. 3 Cir.1970). Any doubt as to an exclusion is resolved in favor of what reason and probability dictate was intended by the parties with respect to coverage. Benton, supra; Paret v. Louisiana Health Service & Indem. Co., 366 So.2d 634 (La.App. 3 Cir.1978), writ den. 369 So.2d 139 (La.,1979). The clear intention behind this policy was payment of disability benefits for occupational accidents, unless, as a practical matter, a workers’ compensation law imposed those costs on the employer or his compensation carrier. In contrast, Walker, supra, relied upon by the First Circuit, contained an exclusionary clause for all occupational accidents.[11]
Here, plaintiff’s right to recover for his occupational accident derives from tort rather than compensation under the *597 LHWCA.[12] Under the LHWCA, where the accident causing disability is not the fault of the employer but that of a third party tort-feasor, the employer’s liability is only initial and temporary.[13] The employer or his carrier is granted a lien upon any recovery which the employee receives from the tort-feasor or can institute suit if the employee fails to do so within six months. The LHWCA gives the employer or his carrier a credit against future benefits for the entire amount of the settlement. Not only has plaintiff repaid the compensation he received, it is unlikely that he will be eligible for “compensation” in the future.
Allowing PALIC to deduct workers’ compensation benefits from the payments due contractually under its policy where the insured did not retain those benefits would unjustly allow PALIC to profit at the expense of the employee it insured.
“[N]o valid and operative distinction may be drawn between the case supposed— where employer or carrier never paid the medical bills — and the actual case before us — where, although it did pay them in the first instance, it was reimbursed by the third party responsible for plaintiff’s injuries. In neither case was it by force of the Workmen’s Compensation Law that the bills were paid.” Moeller v. Associated Hospital Service, 304 N.Y. 73, 106 N.E.2d 16 at 19, dissenting opinion of Fuld, J. (1952).
When this employer’s obligation to pay benefits was terminated by Pinell’s settlement with the tort-feasor, there was no remaining right to compensation.[14] The PALIC policy became fully operative.[15]
Defendant also alleges that plaintiff’s cause of action has prescribed. The policy provides for a two year prescriptive period from the expiration of the time within which proof of claim is required by the policy (60 days). The trial court correctly found that Pinell’s cause of action did not arise until March 1, 1981, when he reimbursed the worker’s compensation benefits which had been paid. Suit was filed on February 9, 1983. Under the provisions of the policy, the suit was timely.
The judgment of the Court of Appeal is reversed, and the trial court judgment awarding plaintiff the sum of $7,800, plus legal interest, is reinstated.
REVERSED.
LEMMON, J., dissents.
BLANCHE, J., dissents and assigns reasons.
MARCUS, J., dissents for reasons assigned by BLANCHE, J.

. Plaintiff by motion dismissed Patterson Services, Inc., as a defendant from this suit before trial.

. “Unless otherwise specified in the Policy no benefits shall be payable for or on account of (1) any bodily injury or sickness for which the person on whom claim is presented has or had a right to compensation under any Workmen’s Compensation or occupational disease law....”

.
"Occupational and Nonoccupational
Accident and Sickness — Weekly Benefit ....60% of Basic
Payable 1st day accident
8th day sickness.
Maximum 52 weeks.
Weekly Income to a maximum of $200.00 per

. 33 U.S.C., §§ 901 through 950.

. He tried to work between October 1, 1978, and June 1, 1979.

. Pinell v. Patterson Services, Inc., 468 So.2d 762 (La.App. 1st Cir., 1985).

. 470 So.2d 116 (La., 1985).

. Footnote 2, supra.

. Footnote 2, supra.

. Footnote 3, supra.

. “No services or benefits shall be provided for:
"(a) Cases covered, in whole or in part, by workmen’s compensation, occupational disease, or disability benefits laws.”
Accord: Keffer v. Prudential Ins. Co., 153 W.Va. 813, 172 S.E.2d 714 (W.Va., 1970); Bonney v. Citizens’ Mut. Auto. Ins. Co., 333 Mich. 435, 53 N.W.2d 321 (1952); Gordon v. New Hampshire Ins. Co., 89 N.J.Super. 246, 214 A.2d 533 (1965); Evoniuk v. Great American Ins. Co., 246 Or. 75, 424 P.2d 216 (1967); Equitable Life Assur. Soc. v. Bachrach, 265 Minn. 83, 120 N.W.2d 327 (1963).

. 33 U.S.C., § 933.

. 33 U.S.C., § 933.

. See Antram v. Stuyvesant Life Ins. Co., 291 Ala. 716, 287 So.2d 837 (Ala., 1973), and Burkett v. Continental Casualty Company, 271 Cal. App.2d 360, 76 Cal.Rptr. 476 (1969).

. This result is contrary to that reached in some other jurisdictions, where the employer or compensation carrier was ultimately reimbursed by a third party for disability compensation payments. See, for example, Land v. Continental Casualty Co., 284 Minn. 453, 170 N.W.2d 568 (1969).
Louisiana law, however, prohibits hypertechnical interpretations of policy language to exclude coverage. Former LSA-C.C. art. 1957 provided:
"In a doubtful case the agreement is interpreted against him who has contracted the obligation."
See Benton Casing Service, Inc. v. Avemco Insurance Company, supra; Rodriguez v. Northwestern Nat. Ins. Co., supra; Branam v. Traders and General Ins. Co., supra.
Although former LSA-C.C. art. 1957 was amended and re-enacted in 1984 as LSA-C.C. art. 2057, effective January 1, 1985, any intended change in interpreting insurance contracts would not affect this suit. LSA-C.C. art. 2057, in pertinent part now provides:
“In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation."