**Joseph BODZIONY, Appellant,**

**v.**

**BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, Respondent.**

**No. WD 71925.**

Missouri Court of Appeals, Western District.

Feb. 15, 2011.

John B. Boyd and Brianne Niemann, Kansas City, MO, for appellant.

John W. Cowden and Jarod G. Goff, Kansas City, MO, for respondent.

Before: JOSEPH M. ELLIS, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

Joseph Bodziony suffered a work-related shoulder injury which eventually required surgery. His health insurer, Blue Cross and Blue Shield of Kansas City, initially paid his medical bills. Bodziony later filed a workers' compensation claim. He was denied recovery of his surgical costs because he had not given his employer advance notice and an opportunity to select his medical providers.

Upon learning that Bodziony's injury was work-related, Blue Cross revoked its payment of his medical bills, based on a policy exclusion for injuries "covered or required to be covered by a workers' compensation benefit." Bodziony sued Blue Cross to challenge this coverage determination. The circuit court granted Blue Cross summary judgment. Because we find that the relevant language of the Blue Cross policy is ambiguous, requiring us to construe it in Bodziony's favor, we reverse.

### Factual Background

Bodziony worked as a firefighter with the City of North Kansas City for thirty-one years. During the relevant time he was a participant in a group health insurance policy issued by Blue Cross.

Beginning in 1995, Bodziony experienced shoulder problems for which he obtained medical treatment through his personal physician. At first, he received only conservative care. However, in 2004 his symptoms worsened. On August 4, 2004, Bodziony underwent surgery to repair a left shoulder rotator cuff tear.

Blue Cross initially paid Bodziony's medical bills, after reducing the amount billed by its contractual discount. Approximately two months later, Bodziony filed a Claim for Compensation with the Division of Workers' Compensation. Blue Cross revoked its payment upon discovering Bodziony's surgery had resulted from a work-related injury, for which he had filed a workers' compensation claim.

North Kansas City and its insurer, Missouri Employers Mutual, stipulated that Bodziony had sustained a work-related injury resulting in a 16% permanent partial disability to his left upper extremity, and that he was entitled to an award of $13,142.34 as a result of this disability. North Kansas City disputed Bodziony's entitlement to reimbursement for past medical expenses, however. After a trial of the issue, an Administrative Law Judge ("ALJ") ruled that "the medical expenses incurred are not covered by Chapter 287 R.S.Mo.," because Bodziony did not provide the City with timely notice of his injury, and thereby denied it the opportunity to choose his medical providers.

Following this determination Bodziony requested that Blue Cross pay the outstanding medical bills because his treatment was not covered by workers' compensation. Blue Cross refused, and denied Bodziony's internal appeals on the ground that his "injuries were related to [his] job" and were therefore excluded from coverage, whether or not he had received reimbursement for his medical expenses through his workers' compensation claim.

Bodziony then filed this lawsuit for breach of contract, vexatious refusal to pay, and specific performance. The trial court granted summary judgment to Blue Cross, concluding that its insurance policy was not ambiguous, and that Bodziony was not entitled to coverage under the policy's plain terms. This appeal follows.

### Standard of Review

"The interpretation of an insurance policy, and the determination whether cover-

age and exclusion provisions are ambiguous, are questions of law that this Court reviews *de novo.*" *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). "Where, as here, the trial court granted summary judgment, this Court also applies a *de novo* standard of review." *Id.* We review the record in the light most favorable to the party against whom summary judgment was entered, affording that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

### Analysis

■ Although Bodziony makes numerous arguments, we need only address one: that Blue Cross' policy is ambiguous, and must be interpreted in his favor to provide coverage. We agree, and therefore reverse the grant of summary judgment.

The dispute in this case centers on a coverage exclusion in Bodziony's Blue Cross group health insurance policy, which provides:

Covered services do not include and no Benefits will be provided for any of the following services, supplies, equipment or care; or for any complications, related to, or received in connection with, such services, supplies, equipment or care that are:

For injuries or illnesses related to Your job to the extent You are covered or required to be covered by a workers' compensation benefit whether or not You file a claim. If You enter into a settlement giving up Your right to recover future medical benefits under a worker's compensation benefit, medical benefits that would have been compensable except for the settlement will not be Covered Services.

The policy contains a second provision addressing the possible overlap between Blue Cross' health insurance and the benefits available through the workers' compensation system. It provides:

5. Reimbursement to Us

   a. Workers' Compensation

   As a Covered Person, You will agree to refund to Us any Benefits We paid to You or on Your behalf for a claim paid or payable under any workers' compensation or Employer's liability law.

   Even if you fail to make a claim under a worker's [sic] compensation plan, and You could have received payment under such plan if You had filed, reimbursement must still be made to Us. We have the right of setoff in all cases.

■ The determinative issue here is whether the provisions of Blue Cross' policy are ambiguous. As our Supreme Court recently explained:

It is black-letter law that: "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Moreover, "[i]n construing the terms of an insurance policy, this Court applies the meaning which would be attached by an ordinary person of average understanding if purchasing insurance, and resolves ambiguities in favor of the insured." This rule, often referred to as the doctrine of *"contra proferentem,"* is applied "more rigorously in insurance contracts than in other contracts" in Missouri. Missouri also strictly construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies.

*Burns,* 303 S.W.3d at 511 (citations and footnote omitted). We are to adopt the

interpretation of policy language which favors, rather than defeats, coverage:

> [A]n insurance policy, being a contract designated to furnish protection, will, if reasonably possible, be construed so as to accomplish that object and not to defeat it. Hence, if the terms are susceptible of two possible interpretations and there is room for construction, provisions limiting, cutting down, or avoiding liability on the coverage made in the policy are construed most strongly against the insurer.

*Id.* at 512 (citation omitted).

Looking to the language of Bodziony's policy, we note that the workers' compensation exclusion uses two different phrases, seemingly as equivalent, to describe the circumstances in which the availability of workers' compensation benefits may defeat coverage. The exclusion first refers to injuries or illnesses for which the insured is "covered or required to be covered" by a workers' compensation benefit. In specifying that a workers' compensation settlement does not necessarily defeat the exclusion, however, the policy refers to medical benefits that would have been "compensable" but for the settlement. The policy's reimbursement provision adds two more terms, again apparently treating them as equivalent: it provides that refunds are due to Blue Cross for any claim "paid or payable" under any workers' compensation law; it then refers to circumstances in which the insured "could have received payment" if he or she had filed a workers' compensation claim.

Considering only the terms of the workers' compensation exclusion itself, we conclude that those terms are ambiguous and cannot defeat coverage. Blue Cross argues that the reference to injuries or illnesses "covered or required to be covered" by a workers' compensation benefit "unambiguously refers to a situation where the insured is required to receive workers' compensation benefits because his/her injury is such that it falls within the scope of a workers' compensation policy." *Burns* instructs that we are to "look[ ] to the dictionary definition of [a] word ... to determine what the ordinary layperson would interpret as the meaning of that word." 303 S.W.3d at 512 n. 5. There *are* dictionary definitions of the verb "cover" which support Blue Cross' focus on the type of injuries subject to workers' compensation coverage: thus, in one dictionary "cover" is defined as "to afford protection or security to typically by means of some stated provision," "insure against a specific risk," or "guarantee indemnification to,"[1] while another dictionary defines "cover" as "[t]o protect or shield from harm, loss, or danger," or "protect by insurance."[2] However, there are also definitions which support Bodziony's argument that "covered" and "required to be covered" refer to his actual right to compensation for the particular costs he incurred: these definitions of "cover" include "defray the cost of," "pay for,"[3] or "[t]o compensate or make up for."[4]

1. WEBSTER'S THIRD NEW INT'L DICTIONARY 524 (unabridged ed.1993).

2. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 421 (4th ed.2006).

3. WEBSTER'S THIRD NEW INT'L DICTIONARY 524 (unabridged ed.1993).

4. AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 421 (4th ed.2006).

In this connection it is also relevant that the Blue Cross health insurance policy refers to injuries covered "by a workers' compensation *benefit*," not to injuries covered by a workers' compensation *policy* or by a workers' compensation *law*. Blue Cross' argument might be stronger if its policy had referred to inju-

The same duplicity of meaning surrounds the word "compensable." Under Missouri's workers' compensation law, a well-understood definition of a "compensable injury" is one which is causally related to a workplace incident or exposure. *See, e.g., Lawrence v. Anheuser Busch Cos.,* 310 S.W.3d 248, 252 (Mo.App. E.D.2010); *Hager v. Syberg's Westport,* 304 S.W.3d 771, 774 (Mo.App. E.D.2010); § 287.020.2, RSMo Cum.Supp.2010. On the other hand, at least one prior decision, addressing an issue strikingly similar to the one we face today, holds that "compensable" may be limited to circumstances in which the employee actually possesses a present right to compensation for a particular injury or medical service. In *Hunt v. Hospital Service Plan of New Jersey,* 33 N.J. 98, 162 A.2d 561 (1960), like here, an employee was awarded workers' compensation for the disability associated with a work-related injury, but was denied reimbursement for past medical treatment because those services were not authorized by the employer. *Id.* at 562. Like here, the employee's health insurer contended that it was not required to reimburse the employee for her medical costs, under a policy exclusion which provided that " '[t]he plan shall not be liable for payment . . . [f]or services rendered for any sickness, disease or injury . . . for which the services are in whole or in part compensable under any State . . . workmen's compensation law.' " *Id.* at 563. The New Jersey Supreme Court recognized that *one* plausible reading of the term "compensable" supported the health insurer's position; *another* plausible reading favored the insured, however:

> It seems to us that there are two reasonably supportable views as to the significance of the word "compensable" as it is used in its present context. One

is that it connotes hospital and medical services of the type declared payable or "compensable" as an incident of an injury of the type entitled to benefits under the Workmen's Compensation Act. That position is advanced by the defendants who say that under such a construction it is of no consequence that for some additional technical condition imposed by the Legislature the particular services do not qualify for payment by the employer. The other view is that to be "compensable" in the contemplation of these insurance contracts, the services not only must be of the type covered by the compensation act but, as between the insurer and insured in the particular case, must in fact qualify for and require payment by the employer.

> . . . To make such [medical] bills payable, that is, compensable in the sense that it is within the competence of a Deputy Director to order them paid, it is not sufficient that they follow in the wake of an employment connected injury. Rather, they must meet their own condition precedent. They must have been authorized by the employer. . . . If they are not authorized they are not "compensable", that is, able to be compensated for; they do not warrant compensation.

> It is perfectly natural and commonplace to speak of a hernia in a particular case as not being compensable when the required notice of its appearance was not given to the employer within 48 hours. The same conclusion would follow where timely notice of the accident was not given, or because the petition for compensation was not filed in time. Such cases do not qualify for payment of

ries covered "by a workers' compensation policy." Instead, the reference to coverage by a *benefit* lends itself to a reading which

focuses on the insured's actual right to be compensated through a workers' compensation claim.

compensation benefits by reason of failure to meet the conditions imposed by the act. All of those instances are of the type legislatively declared compensable, but we have no doubt that a Deputy Director deciding any one of them might very well say, in denying benefits—as was done in this case—that it is not a compensable claim.

*Id.* at 563–64.

Under the rules governing insurance policy construction, if policy language is susceptible to two reasonable constructions, we are to adopt the reading which favors the insured and the grant of coverage. That principle alone would justify a ruling in Bodziony's favor. We note that, as in *Hunt,* the ALJ in Bodziony's case specifically stated that "the medical expenses incurred *are not covered* by Chapter 287 R.S.Mo" due to Bodziony's failure to notify his employer prior to incurring the expenses. As in *Hunt,* the ALJ's statement that Bodziony's medical bills were "not covered" because of his failure to provide timely notice confirms that "it is perfectly natural and commonplace to speak" in terms of such services not being "covered" where the services "do not qualify for payment of compensation benefits by reason of failure to meet the conditions imposed by the [workers' compensation] act." *Id.* at 564.

Beyond the definitions of the words used in the workers' compensation exclusion, additional considerations justify adopting the pro-insured reading of the workers' compensation exclusion here. For example, although Blue Cross argues that the exclusion bars coverage whenever a partic-ular injury substantively falls within the scope of workers' compensation coverage, this reading fails to explain the exclusion's reference to two specific situations: (1) where the insured has failed to file a workers' compensation claim; and (2) where the insured "enter[s] into a settlement giving up [his or her] right to recover future medical benefits under a worker's compensation benefit." If we adopted Blue Cross' reading of the exclusion, and deemed particular injuries to be "covered" whenever they fell within the scope of a workers' compensation benefit, there would be no need for explicit reference to these two circumstances: an injury would continue to fall within the *substantive scope* of a workers' compensation benefit whether or not the insured in fact filed a claim, and whether or not the insured compromised his or her workers' compensation rights. Bodziony persuasively argues that a reasonable insured could read the exclusion as explicitly setting forth the two—and the *only* two—circumstances in which an insured would lose health insurance coverage, even though he did not actually receive workers' compensation benefits.

The policy's reimbursement provision provides further support for Bodziony's position.[5] Although Blue Cross argues that the workers' compensation exclusion, and the workers' compensation reimbursement provision, have a different reach, there is no apparent reason for Blue Cross to apply different standards when precluding payment, on the one hand (the exclusion), versus recouping payments previously made, on the other (the reimbursement provision). Both the exclusion and the reimbursement provision serve the same general purpose: to deny coverage where

---

5. Blue Cross argues that Bodziony waived any argument based on the reimbursement provision by failing to argue it below. However, Bodziony's opposition to Blue Cross' motion for summary judgment, and the briefing in support of his cross-motion, specifically argue that the policy must be construed as a whole, and in particular that the workers' compensation exclusion must be interpreted consistently with the reimbursement provision.

the insured is entitled to workers' compensation benefits for the same services, and thereby establish the primacy of the insured's workers' compensation benefits where those benefits overlap with the insured's health insurance coverage. Moreover, given the time allowed for filing a claim for workers' compensation benefits, and the time necessary to resolve contested claims, it might frequently occur, as in this case, that the costs of an injured employee's medical care are initially paid by the employee's health insurer, rather than through the workers' compensation system. *See Walters v. State Farm Mut. Auto. Ins. Co.*, 793 S.W.2d 217, 220 (Mo. App. S.D.1990). An ordinary person of average understanding would reasonably expect the workers' compensation exclusion, and the workers' compensation reimbursement provision, to be co-extensive and work together.[6]

The reimbursement provision uses terms which are, once again, reasonably subject to a reading favorable to Bodziony. The reimbursement provision states that Bodziony is obligated to reimburse Blue Cross for benefits it provides on a claim which is also "paid or payable" under workers' compensation law. Here, Bodziony's medical expenses plainly were not "paid" through the workers' compensation system. Nor do we believe his expenses

were "payable," at least on one reading of that term. While § 287.260.1, RSMo 2000, suggests that compensation is "payable" under the Workers' Compensation Law "whether or not it has been awarded or is due," under a common understanding of the term, sums are only "payable" where there is an enforceable legal obligation to pay them. We have previously recognized that "Black's Law Dictionary ... defines the term 'payable' as follows: 'Capable of being paid; ... justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it.'" *Gen. Motors Corp. v. Buckner*, 49 S.W.3d 753, 757 (Mo.App. E.D.2001) ("The term 'payable,' as used in the context of wages to determine eligibility for unemployment compensation benefits, requires some legal obligation on the part of the employer to compensate employees."). A similar reading of the term "payable" has been recognized in interpreting workers' compensation exclusions similar to the one at issue here.[7]

In this case, Bodziony's employer was under no legally enforceable obligation to pay for Bodziony's past medical expenses, and those sums were accordingly not "payable" under at least one common definition of the term. Moreover, as evidenced by the ALJ's denial of coverage to Bodziony for his past medical expenses, he could *not*

---

**6.** We also note that Blue Cross' briefing states that, in this very case, after initially paying for Bodziony's surgery, "[r]eimbursement was later required pursuant to [the reimbursement provision] of the Insurance Policy." If this were accurate, the reimbursement provision would seemingly *govern* here, not merely supply information relevant to interpretation of the exclusion. The record is unclear, however, as to the precise manner in which Blue Cross revoked its payment of Bodziony's medical bills, and whether it invoked the reimbursement provision in that connection.

**7.** *Burkett v. Cont'l Cas. Co.*, 271 Cal.App.2d 360, 76 Cal.Rptr. 476, 477 (1969) ("The word 'payable' does not necessarily mean that

which might (or might not) have been obtained by the commencement of proceedings under the Workmen's Compensation Act. It is subject to the meaning that what has been awarded by the Workmen's Compensation Appeals Board but has not yet been collected is 'payable.'"); *Antram v. Stuyvesant Life Ins. Co.*, 291 Ala. 716, 287 So.2d 837, 839–40 (1973) (following *Burkett*). Similarly, *Walters v. State Farm Mutual Automobile Insurance Co.*, 793 S.W.2d 217 (Mo.App. S.D.1990), interprets the term "payable" as applying to "whatever amount is ultimately awarded from workers' compensation for medical expenses." *Id.* at 220.

"have received payment" through the workers' compensation system "if [he] had filed," confirming that the reimbursement provision was not triggered.

We accordingly conclude that Blue Cross' health insurance policy does not unambiguously exclude coverage for medical expenses incurred by an insured where the insured is unable to obtain payment for such expenses through a workers' compensation claim, for reasons other than his failure to file a claim or his settlement of the claim. We note that numerous other forms of a workers' compensation exclusion were available, which could have specified—if Blue Cross had so desired—that health insurance benefits would be unavailable whenever an insured suffered an injury during the course and scope of employment, or whenever an insured suffered the type of injury for which his employer was required to provide workers' compensation benefits.[8] Blue Cross did not employ such language here, however.

---

8. Thus, in *Hines v. Blue Cross Blue Shield of Virginia*, 788 F.2d 1016 (4th Cir.1986), a workers' compensation exclusion provided:

> The following are not provided under the Contract:
>
> (j) services for injuries or diseases arising out of and in the course of the Participant's employment for which an employer is required to furnish or provide for any hospital service to the Participant by the provisions of any Federal, State, or local law or regulation; or services for injuries or diseases to which the Participant as an employee might be entitled by complying with such laws or regulations though he elects to waive his rights to such services; or services for injuries or diseases where the Participant has received any compensation therefor from his employer.

*Id.* at 1018 n. 1. Similarly, in response to the *Hunt* decision the Blue Cross/Blue Shield association in New Jersey adopted the following exclusion:

> We do not provide benefits for services rendered for any disease, injury or condition arising out of and in the course of

# Conclusion

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

All concur.

employment for which benefits and/or compensation are available in whole or in part under the provisions of any Workers' Compensation Law, Occupational Disease Law, or any similar law including any foreign law.

> This exclusion applies whether or not a proper and timely claim for compensation for these services is made under these laws, whether or not benefits are received for these services and whether or not any recovery is received by you against a third party for damages resulting from the condition, disease or injury.

*LaPollo v. Hosp. Serv. Plan of N.J.*, 113 N.J. 611, 552 A.2d 150, 152 (1989). Notably, it appears that Blue Cross' workers' compensation exclusion previously excluded benefits broadly "for any ... injury arising out of and in the course of employment." *See N. Kansas City Mem'l Hosp. v. Wiley*, 385 S.W.2d 218, 219 (Mo.App.1964). Blue Cross denied Bodziony's internal appeals based on the fact that his "injuries were related to [his] job"; the current Blue Cross workers' compensation exclusion requires more than simple work-relatedness, however.