827 So.2d 104 (2001)
Ex parte AWTREY REALTY COMPANY, INC. and
Ex parte Awtrey Development Company, Inc.
(In re Susan Y. Moore v. Awtrey Realty Company, Inc., et al).
1000769 and 1000804.
Supreme Court of Alabama.
December 28, 2001.
*105 C. Peter Bolvig of Hall, Conerly, Mudd & Bolvig, P.C., Birmingham, for petitioner Awtrey Realty Company, Inc.
H.C. Ireland III and W. Perry Webb of Porterfield, Harper & Mills, P.A., Birmingham, for petitioner Awtrey Development Company, Inc.
Thomas E. Baddley, Jr., and Jeffrey P. Mauro of Baddley & Mauro, L.L.C., Birmingham, for respondent.
BROWN, Justice.
Awtrey Realty Company, Inc. ("Awtrey Realty"), and Awtrey Development Company, Inc. ("Awtrey Development"), petitioned this Court for certiorari review of the Court of Civil Appeals' opinion reversing the summary judgments entered in their favor by the Jefferson Circuit Court. We granted the petitions, and we reverse the judgment of the Court of Civil Appeals and remand both cases.

Factual Background
In 1996, Awtrey Development entered into an agreement with Regency Homes ("Regency") to develop a subdivision known as "The Arbors at Lake Crest" or "The Arbors." Awtrey Development owned the land that was to be developed. The agreement provided that Awtrey Development would clear land it owned in the subdivision and prepare the land for the construction of homes. Regency would then construct homes on the land cleared and prepared by Awtrey Development; those homes would be offered for sale. In a separate oral agreement, Regency gave Awtrey Realty the exclusive right to list and sell the homes in The Arbors. Under that agreement, Regency retained the *106 right to terminate Awtrey Realty's exclusive listing and selling privileges at any time.[1]
Awtrey Realty later entered into a "Commission Agreement" with Susan Y. Moore, an independent real estate agent, pursuant to which Moore was to serve as one of Awtrey Realty's sales agents for The Arbors. An attachment to the commission agreement stated, in pertinent part:
"EARNED COMMISSION
"Beginning at first closing in the Arbors section of the Lake Crest community and continuing for life of project, the Sales Associate [Moore] will be paid a straight 75% split on selling side of all commissions earned for in-house sales. Note: Associate must discuss all possible commission reductions with Management, or commission earned will automatically divert [sic] to a 50/50 split basis."
The attachment further provided that Moore would earn a "Project End Bonus" if she remained until the "last unit [was] closed in [the] community."
In 1998, Awtrey Development experienced financial problems because of a substantial debt incurred in the ongoing development of The Arbors. At that time, Awtrey Development owned approximately 50 lots in the subdivision that were undeveloped and that remained unsold. To offset some of its debt, Awtrey Development sold the 50 undeveloped lots to Regency at a purchase price that was lower than the price of the developed lots.
Dwight Sandlin, the president of Regency, had become dissatisfied with the slow sales of homes in The Arbors. Shortly after Regency had purchased the undeveloped lots from Awtrey Development, Sandlin informed Marie Awtrey, the president of Awtrey Realty, that Regency was terminating Awtrey Realty's exclusive listing arrangement for the houses in The Arbors. When Sandlin terminated Awtrey Realty's listing agreement with Regency, Awtrey Realty terminated Moore as an exclusive sales associate for The Arbors. Awtrey Realty and Regency offered Moore other sales associate positions within their companies, which involved selling real estate other than houses at The Arbors, but Moore rejected the offers.
On September 24, 1998, Moore sued Awtrey Realty and Awtrey Development, claiming damages for breach of contract, misrepresentation, tortious interference with contractual relations, and negligent, willful, or wanton failure to honor the commission agreement. On February 22, 2000, the Jefferson Circuit Court entered summary judgments for Awtrey Realty and Awtrey Development. Moore appealed the summary judgments as to only two of her claims: the breach-of-contract claim against Awtrey Realty and the tortious-interference claim against Awtrey Development. The Court of Civil Appeals, in a plurality opinion, reversed the Jefferson Circuit Court. See Moore v. Awtrey Realty Co., 827 So.2d 98 (Ala.Civ.App.2000). Awtrey Realty and Awtrey Development appeal to this Court, arguing that the Court of Civil Appeals' decision conflicts with existing Alabama caselaw.

*107 Discussion

In reviewing the Court of Civil Appeals' reversal of a summary judgment, we apply the following standard set forth in Ex parte Alabama Department of Transportation, 764 So.2d 1263 (Ala.2000):
"[A] party moving for a summary judgment [under Rule 56, Ala. R. Civ. P.,] is entitled to such a judgment if that party meets the following two-tiered standard: 1) There must be no genuine issue of material fact and 2) the movant must be entitled to judgment as a matter of law. Rule 56(c); Carpenter v. Davis, 688 So.2d 256, 258 (Ala.1997). Furthermore this Court must view all the evidence in a light most favorable to the nonmovant and must resolve all reasonable questions from the evidence in favor of the nonmovant. Fincher v. Robinson Bros. Lincoln-Mercury, Inc., 583 So.2d 256 (Ala.1991); see Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
"The movant must make a prima facie showing that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. Fincher, 583 So.2d at 257. If the movant makes this showing, the burden then shifts to the nonmovant to rebut the movant's prima facie showing by presenting `substantial evidence' creating a genuine issue of material fact. Id. `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala.1989)."
764 So.2d at 1266.

I.
Awtrey Realty contends that the Court of Civil Appeals erroneously concluded that its commission agreement with Moore was ambiguous. Moore argues in her brief that the contract clearly states that she was "entitled to list and sell homes on all 99 lots in The Arbors, and thereby earn commission thereon." Awtrey Realty contends that Moore's interpretation of the commission agreement is not reasonable and that it agreed to share with Moore only those commissions that were earned from in-house sales. Awtrey Realty argues that once its listing agreement with Regency was terminated, it no longer earned commissions from sales of homes in The Arbors; thus, it argues, after that point it no longer had commissions to share with Moore. The Court of Civil Appeals concluded that because Moore and Awtrey Realty presented conflicting interpretations of the commission agreement, the agreement was ambiguous.
As this Court stated in P & S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928 (Ala.1985), "[s]ummary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts undisputed." 466 So.2d at 931-32. "As a general rule, whether or not a written contract is ambiguous is a question of law for the trial court." Upton v. Mississippi Valley Title Ins. Co., 469 So.2d 548, 553 (Ala. 1985). "An ambiguity exists where a term is reasonably subject to more than one interpretation." Cannon v. State Farm Mut. Auto. Ins. Co., 590 So.2d 191, 194 (Ala.1991). "The mere fact that adverse parties contend for different constructions does not in itself force the conclusion that the disputed language is ambiguous." Antram v. Stuyvesant Life Ins. Co., 291 Ala. 716, 720, 287 So.2d 837, 840 (1973).
"The words of a contract are to be given their ordinary meaning, and the *108 intention of the parties is to be derived from the provisions of the contract." Smith v. Citicorp Person-To-Person Fin. Ctrs., Inc., 477 So.2d 308, 310 (Ala.1985), citing Food Serv. Distribs., Inc. v. Barber, 429 So.2d 1025 (Ala.1983); Sisco v. Empiregas, Inc., 286 Ala. 72, 237 So.2d 463 (1970). "Ambiguities will not be inserted into contracts by strained and twisted meaning where no such ambiguities exist." P & S Business, Inc. v. South Cent. Bell Tel. Co., 466 So.2d 928, 931 (Ala.1985), citing Michigan Mut. Liab. Co. v. Carroll, 271 Ala. 404, 123 So.2d 920 (1960).
The contract provision at issue here states that Awtrey Realty agrees to share with Moore a percentage of "all commissions earned for in-house sales." Moore argues that this provision granted her an absolute right to sell every home developed in The Arbors. Moore's interpretation of the contract, however, fails to give each word its reasonable and ordinary meaning. Clearly, this language obligates Awtrey Realty only to share with Moore the stated percentage of all of the commissions earned for sales by Awtrey Realty of homes in The Arbors. In no way does this phrase indicate that Awtrey Realty conferred upon Moore an absolute right to sell every single home constructed in The Arbors a right even Awtrey Realty did not have.[2]
Moore further argues that the phrase in the commission agreement stipulating the percentage of the commission to be shared with Moore for the "life of [the] project" means until all of the lots in The Arbors are developed. This argument, however, is irrelevant to the question here because the phrase "life of [the] project" refers to the period during which Awtrey Realty was obligated to share commissions with Moore. As discussed above, once Awtrey Realty ceased earning commissions on in-house sales, there was nothing to share with Moore under the commission agreement. Moore makes no allegation that Awtrey Realty failed to pay her the agreed-upon commissions on sales actually made by Awtrey Realty. Because the provision of the commission agreement Moore says supports her breach-of-contract claim is unambiguous, the trial court properly granted Awtrey Realty's summary-judgment motion.

II.
Awtrey Development argues that it was entitled to a summary judgment on Moore's tortious-interference claim because, it says, Moore failed to produce any evidence to support her assertion that Awtrey Development induced Regency to terminate its agreement with Awtrey Realty. We agree.
The elements of the tort of interference with contractual or business relations are: "1) the existence of a contract or business relation; 2) the defendant's *109 knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference." Soap Co. v. Ecolab, Inc., 646 So.2d 1366, 1371 (Ala.1994). "The general rule firmly meshed into the law of most jurisdictions today is that one who, without justification to do so, induces a third person not to perform a contract with another, is liable to the other for the harm caused thereby." Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590, 596 (Ala.1986)(emphasis added).
There is absolutely no evidence in the record to support the third element of this cause of actionthat Awtrey Development intentionally interfered with Awtrey Realty's agreement with Regency and induced Regency to terminate its listing agreement with Awtrey Realty. Sandlin, in his deposition testimony, stated that he had been concerned about the lack of sales in The Arbors for quite some time before Regency purchased the 50 undeveloped lots from Awtrey Development. He discussed his concerns with Marie Awtrey, but sales of houses in The Arbors did not improve.
Sandlin further testified that when he bought the 50 undeveloped lots from Awtrey Development, he decided that he no longer wanted to continue the exclusive listing agreement with Awtrey Realty. Sandlin testified that he negotiated the property agreement with Al Awtrey, the director of Awtrey Development, and with Don Slatton, the vice president of Awtrey Development and of Awtrey Realty. He later informed Marie Awtrey that he would no longer allow Awtrey Realty to have the exclusive listing for The Arbors. Sandlin stated that the decision to terminate Awtrey Realty's exclusive listing was his own. He stated that his goal in terminating Awtrey Realty's exclusive listing agreement was to increase sales in The Arbors.
Donald Slatton testified that he negotiated the agreement between Awtrey Development and Regency concerning the purchase of the undeveloped lots. He asserts that he had no knowledge of Regency's decision to terminate the listing agreement with Awtrey Realty until he was informed that Regency had decided to retain the listing for itself. Al Awtrey testified that he had not participated in Regency's decision to give Awtrey Realty the exclusive listing for The Arbors and that the negotiations concerning that agreement were between Sandlin and Marie Awtrey.
The above testimony is the only evidence in the record concerning Regency's decision to terminate Awtrey Realty's exclusive listing privilege. Moore's mere assertions that Awtrey Development interfered with Awtrey Realty's agreement with Regency do not constitute evidence, much less substantial evidence Moore must present to overcome Awtrey Development's properly supported summary-judgment motion. All evidence on this issue indicates that Sandlin had grown dissatisfied with Awtrey Realty's sales performance and decided to terminate the listing agreement with Awtrey Realty in order to increase sales of houses in The Arbors.[3] Because Moore has failed to *110 demonstrate that there is a genuine issue of material fact concerning her tortious-interference claim against Awtrey Development, the trial court correctly entered a summary judgment in favor of Awtrey Development.

Conclusion
Because the contract between Moore and Awtrey Realty was unambiguous, the Court of Civil Appeals erred in reversing the trial court's summary judgment in favor of Awtrey Realty. Because Moore failed to produce substantial evidence in support of her claim of tortious interference against Awtrey Development, the Court of Civil Appeals erroneously reversed the trial court's summary judgment in favor of Awtrey Development. Therefore, we reverse the judgment of the Court of Civil Appeals and remand these cases for an order consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and SEE, LYONS, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
HOUSTON, J., concurs in the result.
WOODALL, J., recuses himself.
JOHNSTONE, Justice (concurring specially).
I concur, except that I think "life of the project" means the duration of the exclusive listing agreement granted by Regency to Awtrey Realty. When Regency revoked the exclusive listing agreement, the "life of the project" expired.
NOTES
[1] Susan Moore contends that a written contract between Regency and Awtrey Realty provided otherwise. However, there is no evidence in the record before this Court of another agreement. "`[T]his Court is limited to a review of the record alone, and therefore the record cannot be changed, altered, or varied on appeal by statements in briefs of counsel.'" Hail v. Regency Terrace Owners Ass'n, 782 So.2d 1271, 1277 (Ala.1999), quoting Gotlieb v. Collat, 567 So.2d 1302, 1304 (Ala.1990). The testimony in the record indicates that Regency retained the right to terminate Awtrey Realty's listing at any time.
[2] The reasonableness of Moore's argument that she had an absolute right to sell every home in The Arbors is belied by her own deposition testimony:

"Q: Okay. Well, what if you never sold any of the 99 [homes in The Arbors], what do you think would have happened to [Awtrey Realty's] listing agreement with Regency?
"A: I don't know.
"Q: Do you think Regency was just stuck forever? Honestly?
"A: Typically
". . . .
"A: They would have terminated the listings.
"Q: Well, I mean, that'sthere's nothing hard to understand about that, is there, that if you don't produce you are going to get terminated?
"A: Well, your question was, counsel, if they didn't sell any homes.
"Q: Okay. If you didn't produce a sale, you were going to get terminated, right?
"A: Right."
[3] Additionally, Moore strenuously argues, and the Court of Civil Appeals appeared to agree, that Awtrey Realty and Awtrey Development were not separate and distinct companies, but rather, were part of the same company. Even assuming, for the sake of argument, that this is true, Moore's claim of intentional interference against Awtrey Development would fail as a matter of law because a party to a business or contractual relationship cannot be liable for interfering with that business or contractual relationship. See Ex parte Blue Cross & Blue Shield, 773 So.2d 475 (Ala. 2000); Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238 (Ala. 1992); and Watters v. Lawrence County, 551 So.2d 1011 (Ala.1989).