PARKER, Justice.
*617 This appeal and cross-appeal arise out of an action initiated in the Baldwin Circuit Court by Roman Hoehn Fitzpatrick against Margaret Hoehn ("Margaret").
Facts and Procedural History
John Hoehn ("John") and his wife, Margaret, jointly owned the Foley Flea Market located at 14809 Highway 59 North in Foley, Alabama ("the property"). On April 23, 2009, John, Margaret, and Fitzpatrick entered into an agreement ("the agreement") to sell John's "½ undivided interest in the property" to Fitzpatrick-John and Margaret's daughter-and her then husband, Paul Kihano, for $400,000.[1] The agreement specified that Margaret would "retain her ½ undivided interest in the property." The agreement required Fitzpatrick and Kihano to pay $20,000 at closing and to repay the balance of $380,000, at an interest rate of 3% per annum, in 360 monthly payments of $1,602.10. The agreement stated that Fitzpatrick and Kihano "shall be entitled to enter into possession of [the] property so long as [they are] not in default in the performance of [the agreement]." The agreement also made clear that title to John's "½ undivided interest in the property" would not pass to Fitzpatrick and Kihano until all the payments had been made under the agreement:
"When the purchase price and all other amounts to be paid by [Fitzpatrick and Kihano], pursuant to this Contract, are fully paid as provided for in this Contract, [Margaret and John] will execute and deliver to [Fitzpatrick and Kihano] a good and sufficient deed conveying to [Fitzpatrick and Kihano] good and marketable title to said property by general warranty deed, subject to all restrictive covenants, easements, reservations, mineral reservations[,] conveyance of minerals, rights-of-way applicable to said property of record in the Probate Court of Baldwin County, Alabama, zoning laws and real property taxes and any encroachments existing at the time of conveyance."
Margaret and Fitzpatrick also held a bank account jointly. At some point after the agreement was executed, Margaret withdrew approximately $603,000 from the joint account. According to Fitzpatrick, Margaret would not tell Fitzpatrick why she had withdrawn the money. Apparently, Margaret gave the money she withdrew to Kihano, Fitzpatrick and Kihano's son Justin Kihano ("Justin"), and Timothy Mixon, a family member. This caused tension between Margaret and Fitzpatrick.
Subsequently, on October 21, 2013, John executed a quitclaim deed conveying his one-half interest in the property to Margaret; the quitclaim deed made no mention of the agreement. On November 11 or 12, 2013, Margaret changed the locks on the property so that Fitzpatrick could no longer access the property or operate the flea market.
Thereafter, in mid-November 2013, Fitzpatrick withdrew $395,000 from an account she held jointly with Margaret; it is unclear if this is the same account from which Margaret withdrew approximately $603,000. Concerning the bank account from which she withdrew the $395,000, Fitzpatrick explained:
*618 "[Fitzpatrick's trial counsel:] But how did the funds get in that account, and ... was the account in your name and was it known between you and [Margaret] that those funds were yours, if you can explain that to us?
"[Fitzpatrick:] Yes. The account was only in she and my name, and like I said, after I had gotten divorced I made her the guardian of Justin, I had made her my health proxy, my business proxy, my executrix, and we had-we had had that particular account, it had moved many banks, but since I was a child."
Even though it is undisputed that the $395,000 was in a joint account held by Fitzpatrick and Margaret, Fitzpatrick testified that the $395,000 was hers. Fitzpatrick also withdrew $400,000 from an account at another bank; the parties have not directed this Court's attention to anything indicating who owned this account. Fitzpatrick testified that she withdrew the $400,000 at John's request.
It was undisputed that Fitzpatrick quit making payments under the agreement in December 2013.
On June 6, 2014, Fitzpatrick, with her sisters, initiated this lawsuit against Margaret, Kihano, and Mixon. Fitzpatrick submitted numerous amended complaints adding John's estate[2] as a defendant and asserting a total of 15 claims against the defendants. The only claims relevant for purposes of these appeals are Fitzpatrick's claims against Margaret alleging intentional interference with a contract and intentional interference with business relations; against John's estate alleging breach of contract; and against Margaret, Kihano, and Mixon alleging tortious interference with an inheritance. Concerning her claim against John's estate, Fitzpatrick alleged that John had breached the agreement by conveying his one-half interest in the property to Margaret by quitclaim deed. Fitzpatrick argued that John's conveyance prohibited him from being able to convey his interest in the property to Fitzpatrick upon her performance of the agreement. Fitzpatrick subsequently changed the theory of her breach-of-contract claim to argue that John had assigned the agreement to Margaret by conveying his interest in the property to Margaret by way of the October 21, 2013, quitclaim deed and that Margaret had breached the agreement by denying Fitzpatrick access to the property.
On September 11, 2014, Margaret filed a counterclaim against Fitzpatrick and the other plaintiffs seeking recovery of the $795,000 Fitzpatrick had withdrawn from the bank accounts.
On January 13, 2015, the circuit court entered a scheduling order that was agreed to by the parties. The scheduling order states that "March 2, 2015, is the deadline to join other parties" and that "March 30, 2015, is the deadline to amend pleadings." On March 2, 2015, Fitzpatrick filed a motion to extend the deadline to add a party until the parties completed depositions. The circuit court granted Fitzpatrick an additional 30 days "to determine if additional parties should be added." On August 26, 2015, the circuit court entered an order stating that Fitzpatrick "may file an amended complaint no later than 11:15 a.m. on Thursday, August 27, 2015. Any amended complaint which [Fitzpatrick] see[ks] to file after this said date and time deadline shall be stricken from the record." On August 27, 2015, Fitzpatrick filed her third amended complaint adding Justin as a party. On the same day, the circuit court entered an order stating that "all pleadings in this case are now closed with *619 [Fitzpatrick's] filing of [her] third amended complaint." Subsequently, Fitzpatrick filed two more amended complaints, which the circuit court struck.
On October 6, 2015, Margaret filed a motion for a summary judgment as to several of the claims against her. Relevant to this appeal, Margaret argued that Fitzpatrick's claim of tortious interference with an inheritance is not a valid claim under Alabama law. On October 22, 2015, the circuit court entered a summary judgment in favor of Margaret on Fitzpatrick's claim of tortious interference with an inheritance.
On June 14, 2016, Margaret filed a motion noting that Fitzpatrick had agreed during the course of an oral argument concerning an unrelated motion that John's estate was no longer a party in this case. On the same day, the circuit court entered the following order: "It is hereby noted in the record that counsel stipulated on this date that the Estate of John Hoehn is not a party to this action."
It is undisputed that, before trial, Fitzpatrick returned to Margaret the $400,000 she had allegedly withdrawn at John's direction. Accordingly, Margaret's counterclaim sought recovery of the remaining $395,000 Fitzpatrick withdrew from the account she held jointly with Margaret.
Fitzpatrick states in her brief before this Court that the case proceeded to trial on her claims of intentional interference with a contract, intentional interference with business relations, and breach of contract. Margaret's counterclaim was also tried before the jury.
On November 10, 2016, at the close of Fitzpatrick's case, Margaret filed a motion for a judgment as a matter of law ("JML") as to Fitzpatrick's claims. Concerning Fitzpatrick's breach-of-contract claim, Margaret argued that she was entitled to a JML because, she said, John's obligation under the agreement to convey his interest in the property to Fitzpatrick upon Fitzpatrick's performance had not been assigned to her. Margaret argued that "John's execution of the quitclaim deed, if a breach, was a breach of John['s] ... obligation to convey title. And the breach by John is only actionable against his estate." This was the only argument Margaret asserted in support of her motion for a JML on Fitzpatrick's breach-of-contract claim. The circuit court heard oral argument on Margaret's motion for a JML and, at the conclusion of the oral argument, stated:
"All right. Court's going to rule in this case that as to Counts Three and Four, the interference with business relationships and contractual relationships, I'm going to let those go to the jury and deny the motion for judgment as a matter of law. I am, however, going to grant it as to the breach of contract claim."
Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations and Margaret's counterclaim were submitted to the jury. The jury returned a verdict in favor of Fitzpatrick on her claims and in favor of Margaret on her counterclaim.[3]
*620 On November 14, 2016, the circuit court entered the following order:
"Having struck the Jury on 11/07/2016 this case was tried and submitted to the Jury on 11/10/2016 and the following verdict was rendered as to plaintiff's complaint: 'We, the Jury, find in favor of the Plaintiff, Roman Hoehn Fitzpatrick and against the Defendant, Margaret Hoehn and assess Compensatory Damages: $55,240.00, Punitive Damages: $0.00, Total Damages: $55,240.00, Byron Hilton, Foreperson.' The following verdict was rendered as to the counterclaim: 'We, the jury, find in favor of the defendant/counterclaim plaintiff, Margaret Hoehn and against the plaintiff/counterclaim defendant, Roman Hoehn Fitzpatrick on the defendant/counterclaim plaintiff's counterclaim and assess defendant/counterclaim plaintiff's damages at $395,000.00, Byron Hilton, Foreperson.'
"It is hereby ordered
"1. That Judgment is entered in favor of the Plaintiff, Roman Hoehn Fitzpatrick and against the Defendant, Margaret Hoehn in the amount of $55,240.00 plus costs of court, including jury costs.
"2. That judgment is entered in favor of the Defendant/Counterclaim Plaintiff, Margaret Hoehn and against the Plaintiff/Counterclaim Defendant, Roman Hoehn Fitzpatrick in the amount of $395,000.00."
On December 12, 2016, Fitzpatrick filed a motion for a new trial pursuant to Rule 59, Ala. R. Civ. P., concerning her claims against Margaret, arguing, among other things not relevant to the issues before us, that the amount of the compensatory-damages award is insufficient. On the same day, Fitzpatrick also filed a "motion for judgment notwithstanding the verdict or in the alternative, a new trial"[4] concerning Margaret's counterclaim. Fitzpatrick argued that "1. [t]he jury's verdict is not supported by the evidence and is against the great weight or preponderance of the evidence"; "2. [t]he jury's verdict on [Margaret's] counter-claim relating to the $395,000.00 is not supported by Alabama *621 law and in fact is contrary to Alabama law"; and "3. [Fitzpatrick] was prevented from presenting evidence defending against said counter-claim due to time constraints placed upon [Fitzpatrick] in presenting her case and defenses to the counter-claim."
On December 15, 2016, the circuit court denied Fitzpatrick's postjudgment motions.
Fitzpatrick appealed; Margaret cross-appealed. Because, however, all claims of all parties had not been disposed of by the circuit court's November 14, 2016, order, this Court, on July 24, 2017, remanded the case for the circuit court to
"(1) make the interlocutory order of November 14, 2016, a final judgment pursuant to the provisions of Rule 54(b), Alabama Rules of Civil Procedure ; (2) adjudicate the remaining pending claims and thus issuing a final judgment; or (3) take no action, in which event this appeal will be dismissed as from a non-final judgment."
On August 6, 2017, the circuit court entered the following order:
"This matter comes before the court on defendant Margaret Hoehn's motion for final judgment based on grounds of express abandonment, as to all remaining claims pleaded by all plaintiffs against all defendants.' The motion is due to be, and hereby is, GRANTED. Accordingly, the prior judgment entered by the court following the jury verdict remains the judgment of this court, but now, as to all remaining claims, it is hereby ORDERED, ADJUDGED and DECREED that judgment is rendered in favor of the defendants on all remaining claims of plaintiffs, no costs to be taxed."
Standards of Review
Different standards of review apply in resolving the issues before us. Fitzpatrick first challenges the circuit court's granting of Margaret's motion for a JML on Fitzpatrick's breach-of-contract claim. We apply the following standard of review in considering this issue:
"In American National Fire Insurance Co. v. Hughes, 624 So.2d 1362 (Ala. 1993), this Court set out the standard that applies to the appellate review of a trial court's ruling on a motion for a JML:
" 'The standard of review applicable to a ruling on a motion for JNOV [now referred to as a renewed motion for a JML] is identical to the standard used by the trial court in granting or denying a motion for directed verdict [now referred to as a motion for a JML]. Thus, in reviewing the trial court's ruling on the motion, we review the evidence in a light most favorable to the nonmovant, and we determine whether the party with the burden of proof has produced sufficient evidence to require a jury determination.'
" 624 So.2d at 1366 (citations omitted). Further, in Cessna Aircraft Co. v. Trzcinski, 682 So.2d 17 (Ala. 1996), this Court held:
" 'The motion for a J.N.O.V. [now referred to as a renewed motion for a JML] is a procedural device used to challenge the sufficiency of the evidence to support the jury's verdict. See, Rule 50(b), [Ala.] R. Civ. P.; Luker v. City of Brantley, 520 So.2d 517 (Ala. 1987). Ordinarily, the denial of a directed verdict [now referred to as a JML] or a J.N.O.V. is proper where the nonmoving party has produced substantial evidence to support each element of his claim. However, if punitive *622 damages are at issue in a motion for a directed verdict or a J.N.O.V., then the "clear and convincing" standard applies. Senn v. Alabama Gas Corp., 619 So.2d 1320 (Ala. 1993).'
" 682 So.2d at 19 (footnote omitted). '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co., 547 So.2d 870, 871 (Ala. 1989). See § 12-21-12(d), Ala. Code 1975."
Cheshire v. Putman, 54 So.3d 336, 340 (Ala. 2010). Because the circuit court denied Fitzpatrick's motion for a JML as to Margaret's counterclaim, this is also the standard of review that applies to the issue raised in Margaret's cross-appeal.
Fitzpatrick also challenges the circuit court's decision to strike her fourth and fifth amended complaints, and we review the circuit court's decision to strike Fitzpatrick's amended pleadings for an excess of discretion. See Schoen v. Styron, 480 So.2d 1187, 1189-90 (Ala. 1985) ("[T]he grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion.").
We apply the following standard of review to Fitzpatrick's argument that the circuit court erred in granting Margaret's summary-judgment motion on Fitzpatrick's tortious-interference-with-an-inheritance claim:
" 'The standard of review applicable to a summary judgment is the same as the standard for granting the motion....' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala. 1992).
" 'A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact-"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala. Code 1975, § 12-21-12 ; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
" Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala. 2006).
Discussion
First, Fitzpatrick argues that the circuit court erred in granting Margaret's motion for a JML on Fitzpatrick's breach-of-contract claim. As noted above, Fitzpatrick initially asserted her breach-of-contract claim against John's estate, asserting that John breached the agreement when he transferred his interest in the property to Margaret via the October 21, 2013, quitclaim deed. Fitzpatrick then changed her argument below to argue that *623 the quitclaim deed acted as an assignment of John's interest in the agreement to Margaret and that Margaret breached the agreement by denying Fitzpatrick access to the property. On appeal, Fitzpatrick maintains her theory that John assigned the agreement to Margaret via the quitclaim deed and that Margaret breached the agreement by denying Fitzpatrick access to the property.
Initially, we note that Fitzpatrick argued that Margaret, as an assignee to the agreement but not as a party, breached the agreement by denying Fitzpatrick access to the property. Margaret is quite obviously a party to the agreement. The agreement specifically states that "this contract [is] entered into ... by and between MARGARET J. HOEHN and JOHN A. HOEHN, Wife and Husband hereinafter referred to as 'Seller' and [FITZPATRICK] and PAUL KIHANO ...." The agreement specifically states that "the Seller," a term defined by the agreement to expressly include Margaret, "will execute and deliver to the Buyers [Fitzpatrick and Kihano] a good and sufficient deed conveying to the Buyers good and marketable title to said property by general warranty deed." Margaret also signed the agreement under the "Seller" signature block. It appears that Fitzpatrick did not need to prove that John assigned his interest in the agreement to Margaret in order to demonstrate that Margaret breached the agreement; Margaret was a party to the agreement initially.
However, the record indicates that Fitzpatrick expressly and repeatedly abandoned any argument based on Margaret's being a party to the agreement. During the course of oral argument on Margaret's motion for a JML, Margaret's trial counsel stated:
"[T]hroughout this trial, from this witness stand and in the arguments of counsel for [Fitzpatrick], [Fitzpatrick has] adamantly contended that [Margaret] was not a party to [the agreement], that she was just a witness to that, and [Fitzpatrick is] estopped at this point from now saying, oh, yeah, yeah, [Margaret] was a party to the contract and she breached it, because [Fitzpatrick has]-[her] contention all along has been that she's not."
Fitzpatrick's trial counsel did not respond to this position taken by Margaret's trial counsel and makes no argument on appeal that Margaret is a party to the agreement.
Obviously, Margaret could be found to have breached the agreement only if she was a party to the agreement. Fitzpatrick argues not that Margaret was a party to the agreement, but that John assigned his interest in the agreement to Margaret; therefore, the question whether Margaret breached the agreement depends on whether John in fact assigned the agreement to Margaret.
Concerning assignments, this Court set forth the following applicable law in DeVenney v. Hill, 918 So.2d 106, 113 (Ala. 2005) :
"There are no formal requirements for an assignment, and 'an assignment may be written, parol, or otherwise.' Baker v. Eufaula Concrete Co., 557 So.2d 1228, 1230 (Ala. 1990). The court must look to the substance of the assignment rather than to its form to determine whether there has been an assignment. See id. There has been an assignment (1) if the assignor intended to transfer a present interest in the subject matter of the contract, id., and (2) if the assignor and the assignee mutually assented to the assignment. See 6A C.J.S. Assignments § 73 (2004). An assignment is construed in accordance with the law of contracts. Dill v. Blakeney, 568 So.2d 774, 778 (Ala. 1990)."
*624 Fitzpatrick's entire argument concerning this issue states:
"According to Margaret Hoehn, John Hoehn intended to convey to her his undivided one-half interest in the [property] (the subject matter of the contract) by executing the quit claim deed to Margaret Hoehn. This would clearly constitute an intent on behalf of John Hoehn to transfer a present interest in the subject matter of the [agreement]. Likewise, if Margaret Hoehn is believed, John Hoehn, by executing the quit claim deed, consented to the assignment by divesting himself in the [property], which was the only subject of the contract. By accepting the quit claim deed from John Hoehn, Margaret certainly consented to the assignment for she used it to her benefit in ousting [Fitzpatrick] from the flea market."
Fitzpatrick's brief, at pp. 29-30. Fitzpatrick does not cite any authority, other than the generally applicable law in DeVenney, supra, or provide any analogous cases to aid in analyzing this issue.
The quitclaim deed transferred John's ownership interest in the property to Margaret. However, the quitclaim deed did not assign John's interest in the agreement to Margaret; it makes no mention of the agreement. Further, even if John had intended to assign his rights under the agreement to Margaret, Fitzpatrick has not directed this Court's attention to anything in the record indicating that Margaret assented to the assignment. Fitzpatrick argues that Margaret's actions denying Fitzpatrick access to the property demonstrate that she assented to the assignment of John's rights under the agreement. Fitzpatrick does not explain this assertion. Margaret's decision to deny Fitzpatrick access to the property is consistent with her complete ownership of the property as if unencumbered by the agreement. If Margaret had been assigned John's interest in the agreement, Margaret would have been required under the agreement to allow Fitzpatrick access to the property. Fitzpatrick has failed to demonstrate that John assigned his interest in the agreement to Margaret. Because Fitzpatrick has failed to make any argument based on Margaret's being a party to the agreement, she cannot prove that Margaret breached the agreement. Accordingly, Fitzpatrick has not demonstrated that the circuit court erred in granting Margaret's motion for a JML on Fitzpatrick's breach-of-contract claim.
Next, Fitzpatrick argues that the circuit court "erred in denying [her] leave to file the fourth and fifth amended complaints." Fitzpatrick's brief, at p. 38. As noted above, the circuit court entered a scheduling order pursuant to Rule 16(b), Ala. R. Civ. P., which states, in pertinent part:
"The court may enter a scheduling order that limits the time
"(1) to join other parties and to amend the pleadings;
"....
"Any scheduling order shall be issued as soon as practicable. Once a scheduling order is issued, the schedule set thereby shall not be modified except by leave of court upon a showing of good cause."
After one modification to the scheduling order at Fitzpatrick's request, the circuit court's scheduling order set August 27, 2015, as the deadline for joining other parties and amending the pleadings. Fitzpatrick attempted to amend her pleadings by filing a fourth amended complaint on October 19, 2015, and a fifth amended complaint on August 8, 2016. Margaret filed a motion to strike Fitzpatrick's fourth amended complaint, which sought to add Mixon Holding, LLC, as a party, arguing *625 that Fitzpatrick had "not shown good cause for [her] failure to add a party, the identity of which party has been known to [Fitzpatrick] for two years." The circuit court granted Margaret's motion to strike Fitzpatrick's fourth amended complaint. Margaret did not file a motion to strike Fitzpatrick's fifth amended complaint, which sought to assert eight additional claims against the defendants. The circuit court ex mero motu denied Fitzpatrick's motion for leave to file a fifth amended complaint, stating the following reason:
"The parties previously moved jointly for an order, which was entered by this court almost a year ago, on August 26, 2015, and said order provided for a 'FINAL DEADLINE TO AMEND THE COMPLAINT' of August 27, 2015 at 11:15 a.m. and stated that any [pleading] filed after that date and time would be stricken. [Fitzpatrick's] proposed [fifth] amended complaint has been filed more than 11 months after the jointly agreed 'FINAL DEADLINE TO AMEND THE COMPLAINT.' Therefore, motion for leave to amend is denied."
The question before us is whether the circuit court exceeded its discretion in striking Fitzpatrick's fourth and fifth amended complaints, which were filed after the circuit court's deadline imposed in its scheduling order issued pursuant to Rule 16(b). In Arfor-Brynfield, Inc. v. Huntsville Mall Associates, 479 So.2d 1146, 1149-50 (Ala. 1985), this Court set forth the relevant principles concerning a party's attempt to amend its pleadings after a scheduling-order deadline has expired:
"The pre-trial procedure established by Rule 16, A[la]. R. Civ. P., is designed to clarify and simplify the issues to be tried. ... The pre-trial order is not written in stone, but it is not without meaning either. See Committee Comment, Rule 16, A[la]. R. Civ. P. Obviously, as it is noted in the comment, pre-trial orders cannot be effective unless the judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial conference, particularly where ... the subject matter of the proffered amendment was known to the pleader at the time of the pre-trial conference and was not then offered.
"... As the Court noted in Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So.2d 645 (1975), Rule 16, A[la]. R. Civ. P., must be read in conjunction with Rules 1 and 15, A[la]. R. Civ. P., and thus liberal allowance of amendments when justice so requires must take precedence over strict adherence to the pre-trial order in Alabama practice.
"... In Metropolitan Life Ins. Co. v. Sullen, 413 So.2d 1106 (Ala. 1982), the Court affirmed a ruling by the trial court disallowing an amendment to the defendant's answer offered after entry of a pre-trial order. There we said:
" 'We find no error in the trial court's decision. A pretrial order, when entered, "shall control the subsequent course of the action, unless modified at the trial to prevent manifest injustice," Rule 16, [Ala. R. Civ. P.]. Although amendments are to be liberally allowed under Rule 15, trial judges have discretion to allow or refuse amendments, and should not allow them where the trial will be unduly delayed or the opposing party unduly prejudiced.... Although Rule 16 does not preclude amendments subsequent to "the pre-trial order, the pre-trial procedure becomes ineffective unless the trial judge has the right to disallow amendments to pleadings filed subsequent to the pre-trial hearing" [quoting *626 Alabama Farm Bureau Mutual Casualty Ins. Co. v. Guthrie, 338 So.2d 1276, 1278-79 (Ala. 1976) ].
" '....'
" 413 So.2d at 1108."
(Emphasis added.) In his treatise on the Alabama Rules of Civil Procedure, former Justice Champ Lyons states: "Even though an amended pleading is filed after the cut-off date in a scheduling or pre-trial order, the trial court must still have a valid reason for disallowing the amendment." 1 Champ Lyons, Jr., and Ally Windsor Howell, Alabama Rules of Civil Procedure Annotated, Rule 16, § 16.5, p. 511 (4th ed. 2004). Further, former Justice Lyons notes that this Court, in Huskey v. W.B. Goodwyn Co., 295 Ala. 1, 321 So.2d 645 (1975),
"[a]nnouncing a preference for full justice on the merits rather than a stronger interest in expedient disposition of lawsuits, ... has expressed disapproval of rigorous enforcement of the pretrial order. Accordingly, the entry of a pretrial order does not terminate the applicability of the Rule 15 Ala. R. Civ. P. requirement that 'amendments shall be freely allowed when justice so requires.' "
Alabama Rules of Civil Procedure Annotated, Rule 16, § 16.5, pp. 511-12.
From our reading of the applicable caselaw and the treatise on the Alabama Rules of Civil Procedure, it appears that the liberal standard of Rule 15, Ala. R. Civ. P., applies, even if the amended pleading is filed after a deadline established by the Rule 16(b) scheduling order has passed. However, even under the liberal standard of Rule 15, Fitzpatrick has not demonstrated that the circuit court exceeded its discretion in striking her fourth and fifth amended complaints. In Boros v. Baxley, 621 So.2d 240 (Ala. 1993), this Court stated: "Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that 'the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion.' " 621 So.2d at 245. Thus, " Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time." Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala. 1980). "[U]ndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment." Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala. 1989). "[I]f the court determines ... that a party has had sufficient opportunity to state a claim ... but has failed to do so, leave to amend may properly be denied." Walker v. Traughber, 351 So.2d 917, 922 (Ala. Civ. App. 1977).
On appeal, Fitzpatrick argues, as she did below, that her only reason for filing her fourth amended complaint was because of her "inadvertence and haste" in filing her third amended complaint. Fitzpatrick does not allege that she discovered facts that necessitated the filing of the fourth amended complaint. Quite the contrary. Fitzpatrick had actual knowledge of all the facts necessary to add Mixon Holdings, LLC, as a defendant at the time she filed her third amended complaint; she simply failed to do so through her own unforced error. As Margaret argued below, Fitzpatrick knew the identity of Mixon Holdings, LLC, for two years. Fitzpatrick offers no explanation for her delay in attempting to add Mixon Holdings, LLC, as a party. Fitzpatrick has failed to demonstrate that the circuit court erred in striking her fourth amended complaint.
Concerning her fifth amended complaint, Fitzpatrick argued below that, "through investigation and discovery[,] additional facts and evidence have come to the attention of [Fitzpatrick's] counsel giving *627 rise to these additional claims." Fitzpatrick offers what those facts are concerning only one of the additional eight claims she asserted. That one claim is a claim seeking to recover mortgage income from a mortgage executed in favor of her and Margaret. The mortgage was executed on May 8, 2013. Fitzpatrick offers no explanation as to why she did not discover the fact that she was a mortgagee and entitled to mortgage income until she filed her fifth amended complaint on August 8, 2016. Fitzpatrick's undue delay in filing this claim when she, as a mortgagee, certainly had the information years earlier is reason alone for striking her fifth amended complaint. See Puckett, supra. Fitzpatrick has not demonstrated that the circuit court exceeded its discretion in striking her fifth amended complaint.
Next, Fitzpatrick argues that the circuit court erred in denying her motion for a new trial concerning her claims of intentional interference with a contract and intentional interference with business relations against Margaret. Specifically, Fitzpatrick argues that the amount of damages awarded by the jury on those claims is insufficient. Before addressing Fitzpatrick's argument, we note that Margaret's cross-appeal also concerns those claims. Margaret argues in her cross-appeal that the circuit court erred in denying her motion for a JML on Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations. We will consider Margaret's cross-appeal first because, should she prevail, it would vacate the jury's verdict in favor of Fitzpatrick, thereby mooting Fitzpatrick's argument concerning the amount of the damages awarded.
In Waddell & Reed, Inc. v. United Investors Life Insurance Co., 875 So.2d 1143, 1153-54 (Ala. 2003), this Court set forth the following law applicable to claims of intentional interference with a contract and intentional interference with business relations:
"In Parsons v. Aaron, 849 So.2d 932 (Ala. 2002), we discussed extensively the elements necessary to prove the tort of interference with contractual or business relationships:
" 'This Court recently recognized that to establish tortious interference with contractual or business relations a plaintiff must prove:
" ' " '1) the existence of a contract or business relation; 2) the defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; 4) the absence of justification for the defendant's interference; and 5) damage to the plaintiff as a result of the interference.'
" 'Ex parte Awtrey Realty Co., 827 So.2d 104, 108-09 (Ala. 2001), quoting Soap Co. v. Ecolab, Inc., 646 So.2d 1366, 1371 (Ala. 1994).
" '....
" 'In addition to the elements recited above, this Court has also recognized:
" ' " 'After proving the existence of a contract, it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a "third party," i.e., a "stranger" to the contract with which the defendant allegedly interfered.' Atlanta Market Ctr. Management Co. v. McLane, 269 Ga. 604, 608, 503 S.E.2d 278, 282 (1998) ; see also Alcazar Amusement Co. v. Mudd & Colley Amusement Co., 204 Ala. 509, 86 So. 209 (1920). This is so, because 'a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract.'
*628 Lolley v. Howell, 504 So.2d 253, 255 (Ala. 1987).
" ' " 'One is not a stranger to the contract just because one is not a party to the contract....' McLane, 269 Ga. at 608, 503 S.E.2d at 282 (emphasis added [in BellSouth Mobility ] ). As we recently stated in Colonial Bank v. Patterson, 788 So.2d 134 (Ala. 2000) : '[W]hen tripartite relationships exist and disputes arise between two of the three parties, then a claim alleging interference by the third party that arises from conduct by the third party that is appropriate under its contract with the other two parties is not recognized.'
" ' BellSouth Mobility[, Inc. v. Cellulink, Inc.], 814 So.2d [203] at 212 [ (Ala. 2001) ]. '
" 849 So.2d at 946-47."
(First emphasis added.)
Margaret argues that she is entitled to a JML on Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations because, she says, Fitzpatrick failed to prove that Margaret is a stranger to the agreement. Margaret is correct. As discussed above, Margaret is a party to the agreement, and she and Fitzpatrick undisputedly operated the flea market as equal owners.
In her reply brief, Fitzpatrick argues that "the 'stranger' defense" is an affirmative defense that Margaret failed to timely raise and thus waived. Fitzpatrick cites no authority to support her argument that "the 'stranger' defense" is an affirmative defense. It is not. Instead, as set forth above, this Court has recognized that "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a 'third party,' i.e., a 'stranger' to the contract with which the defendant allegedly interfered." Waddell, 875 So.2d at 1153 (emphasis added). It was Fitzpatrick's burden to prove that Margaret is a stranger to the agreement, which she failed to do. Accordingly, we conclude that the circuit court erred in denying Margaret's motion for a JML on Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations. We reverse the circuit court's judgment insofar as it found in favor of Fitzpatrick on her claims of intentional interference with a contract and intentional interference with business relations and thus vacate Fitzpatrick's compensatory-damages award. Because we are vacating Fitzpatrick's damages award, Fitzpatrick's argument that the damages award was insufficient is rendered moot, and, as to that claim, we dismiss her appeal.
Next, Fitzpatrick argues that the circuit court erred in entering a summary judgment in favor of Margaret on Fitzpatrick's claim alleging tortious interference with an inheritance. Margaret asserts before this Court, as she did below, that this Court "has held as a matter of law that there is no claim" of tortious interference with an inheritance. Margaret's brief, at p. 40. Margaret is incorrect.
This Court has not yet definitively determined whether there exists under Alabama law a cause of action for tortious interference with an inheritance. This Court has on two occasions issued opinions addressing the issue whether a claim of tortious interference with an inheritance is a valid claim. In Holt v. First National Bank of Mobile, 418 So.2d 77 (Ala. 1982), this Court first considered whether a claim of tortious interference with an inheritance exists under Alabama law. This Court stated:
"This Court has not addressed the proposed cause of action for tortious interference *629 with an expectancy in an inheritance or bequest. We find that while courts in several other jurisdictions have recognized that such a right of action exists, the cases in which plaintiffs have been successful on appeal have shown more compelling circumstances than those alleged by these plaintiffs.
"For the action to lie, the defendant must have used independently tortious means to interfere with the testator's intent. Peffer v. Bennett, 523 F.2d 1323 (10th Cir. 1975) ; Prosser, The Law of Torts, § 130, p. 951 (4th Ed. 1971). The most glaring example of such a wrongful act can be found in Pope v. Garrett, 204 S.W.2d 867 (Tex. Civ. App. 1947). In that case two of the defendants prevented the testatrix from signing her will in the presence of witnesses, by force or by creating a disturbance. The Court of Civil Appeals of Texas affirmed a judgment imposing a constructive trust against these two defendants who physically interfered with the signing of the will.
"In most cases, the wrongful conduct alleged is some species of fraud or deceit, as is the case here. Nevertheless, the plaintiffs whose appeals have succeeded have generally presented much stronger cases than these plaintiffs have alleged. Either the alleged bequest to the plaintiff was in writing, as in Harmon v. Harmon, 404 A.2d 1020 (Me. 1979), and Frohwein v. Haesemeyer, 264 N.W.2d 792 (Iowa 1978), or written evidence of the fraudulent representation existed, as in White v. Mulvania, 575 S.W.2d 184 (Mo. 1978) ; Kramer v. Freedman, 272 So.2d 195 (Fla. App. 1973) ; Allen v. Leybourne, 190 So.2d 825 (Fla. App. 1966) ; and Mitchell v. Langley, 143 Ga. 827, 85 S.E. 1050 (1915). The plaintiff in Bohannon v. Wachovia Bank and Trust Co., 210 N.C. 679, 188 S.E. 390 (1936), did not allege any such writing, but rather that he did not know whether or not his grandfather had written a will in plaintiff's favor and that the defendant[ ] had special access to such knowledge. The Supreme Court of North Carolina held that the complaint stated a cause of action and that the plaintiff should be allowed to question the defendant who was alleged to have special knowledge of the facts. We hold that with no writing alleged and with Mrs. Inge, the alleged defrauder, deceased, the plaintiffs herein have not alleged facts which would bring them within the proposed cause of action.
"We are aware that several of the courts in recognizing this cause of action have remarked that the difficulty of proving such a case does not go to the existence of a cause of action. But a line must be drawn somewhere; here, the alleged promise would have been made more than fifteen years before the original complaint was filed, the alleged tortfeasor is dead, and no written evidence of either the intent or the fraud is alleged. Beyond mere difficulty of proof, such an action controverts the policy of several well-established principles of law: the formalities required for testamentary dispositions of property, set out in Code 1975, § 43-1-30 ; the Statute of Frauds, requiring agreements to make wills and to convey interests in real property to be in writing before such agreements are enforceable, [Ala. Code 1975,] § 8-9-2; statutes of limitations, barring prosecution of stale claims; and the Dead Man's Statute, [Ala. Code 1975,] § 12-21-163, which provides that 'no person having a pecuniary interest in the result of the action or proceeding shall be allowed to testify ... as to any transaction with, or statement by, the deceased person whose estate is interested in the result of the action ....' "
*630 Holt, 418 So.2d at 79-80 (footnotes omitted).
More recently, in Kershaw v. Kershaw, 848 So.2d 942 (Ala. 2002), a plaintiff sued a defendant alleging, among other things, tortious interference with an inheritance; the trial court dismissed the plaintiff's tortious-interference claim. On appeal, this Court had before it several issues, including "whether Alabama recognizes a cause of action for tortious interference with an expectancy in an inheritance or a bequest." 848 So.2d at 949-50. Based on a complicated analysis involving in terrorem clauses in a trust, issues that are not presently before this Court, this Court concluded that the defendant "suffered no interference with an inheritance even if we were to recognize such a cause of action in this proceeding." Id. at 957 (emphasis added).
In Holt and Kershaw, this Court contemplated the validity of a claim of tortious interference with an inheritance; this Court did not explicitly hold that such a cause of action either does exist or does not exist. Rather, this Court stated in Holt that "[w]e are aware that several of the courts in recognizing this cause of action have remarked that the difficulty of proving such a case does not go to the existence of a cause of action. But a line must be drawn somewhere." 418 So.2d at 80. Even if we were to recognize such a cause of action, the facts of this case do not get us across that line.
The circuit court entered a summary judgment on Fitzpatrick's claim of tortious interference with an inheritance. Thus, in order to demonstrate that the circuit court committed reversible error, Fitzpatrick must show that there is a genuine issue of material fact concerning her claim. Of course, Fitzpatrick carries the initial burden of presenting substantial evidence in support of her claim of tortious interference with an inheritance.[5] In her brief, Fitzpatrick asserts that "there is substantial evidence that a signed will existed, however, it is believed to have been destroyed by ... Margaret." Fitzpatrick's brief, at p. 52. Fitzpatrick further asserts that "an identical unsigned copy exists and other signed writings exists [sic] supporting the existence of an executed will and trust agreement." Id. at pp. 52-53. Fitzpatrick also asserts that "there is evidence that the interference was caused by independently tortuous [sic] conduct." Id. at p. 53. However, Fitzpatrick does not direct this Court's attention to anything in the record supporting these factual assertions; Fitzpatrick has not supported her claim of tortious interference with an inheritance with substantial evidence. Accordingly, because Fitzpatrick failed to meet her initial evidentiary burden, we must conclude that the circuit court did not err in granting Margaret's summary-judgment motion on Fitzpatrick's claim of tortious interference with an inheritance.
Lastly, Fitzpatrick argues that the circuit court erred in denying her motion for a new trial or for a JML concerning Margaret's counterclaim seeking *631 recovery of the $395,000 Fitzpatrick withdrew from an account held jointly by Fitzpatrick and Margaret. Fitzpatrick argues that the circuit court erred in denying her postjudgment motion because Margaret failed to respond to a request for production of documents submitted by Fitzpatrick. The request for production of documents at issue sought documentation proving that Margaret owned the $395,000. However, Fitzpatrick did not make this argument in her postjudgment motion. See infra, 262 So. 3d at 620-21. The circuit court did not rule on this issue in denying Fitzpatrick's postjudgment motion; thus, it cannot serve as the basis for demonstrating reversible error. Moreover, even if this issue were properly before this Court, Fitzpatrick has not cited any authority supporting her argument and the argument is thus waived. See Rule 28(a)(10), Ala. R. App. P., and White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042 (Ala. 2008).
Conclusion
In case no. 1160393-Margaret's cross-appeal of the circuit court's judgment in favor of Fitzpatrick on Fitzpatrick's claims of interference with a contract and intentional interference with business relations-we reverse the circuit court's judgment in favor of Fitzpatrick and render a judgment in favor of Margaret. In case no. 1160348-Fitzpatrick's appeal of the amount of Fitzpatrick's compensatory-damages award and the circuit court's judgment in favor of Margaret on Margaret's counterclaim against Fitzpatrick-we dismiss the appeal as moot insofar as Fitzpatrick challenges the compensatory-damages award and affirm the judgment on Margaret's counterclaim.
1160348-APPEAL DISMISSED IN PART; AFFIRMED.
1160393-REVERSED AND JUDGMENT RENDERED.
Stuart, C.J., and Bolin, Main, Wise, Bryan, and Mendheim, JJ., concur.
Shaw and Sellers, JJ., concur in the result.

Fitzpatrick and Kihano later divorced, and Kihano conveyed his interest in the property to Fitzpatrick as part of their divorce settlement.

John died at some point, but the date of his death is not specified by the parties.

We note that, on November 13, 2016, after the jury had already entered its verdict on Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations and on Margaret's counterclaim, the circuit court entered a general order denying Margaret's motion for a JML. The language of this order appears to deny the entirety of Margaret's motion for a JML. However, as set forth above, the circuit court clearly granted in part Margaret's motion for a JML concerning Fitzpatrick's breach-of-contract claim. This claim was not submitted to the jury. We are certain of this because, in addition to the circuit court's oral ruling granting Margaret's motion for a JML on Fitzpatrick's breach-of-contract claim, the circuit court also charged the jury, as follows: "Now, this case was brought to you on a complaint filed by [Fitzpatrick] in which there's two causes of action for your consideration. And they are the causes of action of interference with contract and interference with a business relationship." (Emphasis added.) The circuit court made no mention of Fitzpatrick's breach-of-contract claim in its charge to the jury. Therefore, the jury's verdict in favor of Fitzpatrick was not based on her breach-of-contract claim. It appears that the circuit court's November 13, 2016, language purporting to deny in its entirety Margaret's motion for a JML was a mistake. The circuit court had already granted in part Margaret's motion for a JML and did not submit Fitzpatrick's breach-of-contract claim to the jury. Had the circuit court intended to deny Margaret's motion for a JML in its entirety on November 13, 2016-after the case had been tried on Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations and on Margaret's counterclaim and the jury had returned its verdict-it would have been necessary for the circuit court to order a new trial because Fitzpatrick's breach-of-contract claim was not submitted to the jury; this the circuit court did not do. Further, we note that the arguments raised by the parties in the briefs before this Court are based on the premise that the circuit court granted Margaret's motion for a JML as to Fitzpatrick's breach-of-contract claim. Accordingly, based on the circumstances of this case, we will assume that the circuit court granted Margaret's motion for a JML as to Fitzpatrick's breach-of-contract claim and denied it as to Fitzpatrick's claims of intentional interference with a contract and intentional interference with business relations.

Rule 59, Ala. R. Civ. P., as amended in 1995, renamed the "motion for a judgment notwithstanding the verdict" as a "renewed motion for a judgment as a matter of law."

Alabama has not set forth the elements of a claim of tortious interference with an inheritance. However,
"[a] common list of the elements [a] plaintiff must prove in order to recover includes: 'the existence of the expectancy; that the defendant intentionally interfered with the expectancy; that the interference involved tortious conduct such as fraud, duress, or undue influence; that there was a reasonable certainty that the plaintiff would have received the expectancy but for the defendant's interference; and damages.' "
Irene D. Johnson, Tortious Interference with Expectancy of Inheritance or Gift-Suggestions for Resort to the Tort, 39 U. Tol. L. Rev. 769, 771 (2008) (quoting Sonja Soehnel, Annotation, Liability in Damages for Interference with Expected Inheritance or Gift, 22 A.L.R. 4th 1229, § 2 (1983)).